UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
AFRODITE SEA TRADE S.A..,

                Plaintiff

    – v. –                                   07 CV 5626 (DAB)(MHD)

SHINE STAR SEA-TRANSPORT
PTE, LTD., *et al.*                      **ELECTRONICALLY FILED**

                Defendants.

-------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
BENXI NORTHERN STEEL PIPES CO. LTD.'S MOTION TO DISMISS AND
TO VACATE PROCESSES OF MARITIME ATTACHMENT AND GARNISHMENT**


                                                             NICOLETTI HORNIG & SWEENEY
                                                             Wall Street Plaza
                                                             88 Pine Street, Seventh Floor
                                                             New York, New York 10005-1081
                                                             (212) 220-3830

                                                             *Attorneys for Defendant*
                                                                 *Benxi Northern Steel Pipes Co. Ltd.*

Of Counsel

    James F. Sweeney
    Michael J. Carcich
    Kevin J.B. O'Malley

**PRELIMINARY STATEMENT**

Defendant Benxi Northern Steel Pipes Co. Ltd. ("Benxi") submits this Memorandum of Law in support of its motion to dismiss the claim asserted against it in the Second Amended Verified Complaint (the "Complaint") and to vacate the Processes of Maritime Attachment and Garnishment issued against it.

**ARGUMENT**

Under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, a maritime attachment should issue only "if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

Under Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, a defendant has an opportunity to appear before the Court to contest an attachment. "At the Rule E(4)(f) hearing, the defendant can attack 'the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.' " *OGI Oceangate Transp. Co. Ltd. v. RP Logistics PVT. Ltd.*, No. 06 Civ. 9441, 2007 WL 1834711, at *3 (S.D.N.Y. June 26, 2007) (quoting Fed. R. Civ. P. Supp. Rule E, Advisory Committee Notes (1985 Amendment)).

On a motion to vacate a maritime attachment, the plaintiff who obtained the attachment has the burden to show that the attachment was properly ordered and complied with the requirements of Rules B and E. *See Aqua Stoli* at 445 n. 5. "[A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the

requirements of Rules B and E." *Id*. at 445. In addition, "a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Id*. The defendant bears the burden of demonstrating that these equitable grounds for vacatur exist. *See id*. at n. 5.

## POINT I

### THE MARITIME ATTACHMENT SHOULD BE VACATED BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BENXI

To sustain the attachment, Plaintiff Afrodite Sea Trade S.A. ("Afrodite") must demonstrate that it has a claim against Benxi that " 'is cognizable in admiralty.' " *OGI*, 2007 WL 1834711 at *3 (citation omitted); *see also Aqua Stoli*, 460 F.3d at 445. Afrodite cannot do so. The attachment should be vacated, and the claim asserted against Benxi dismissed, because Afrodite has failed to state a claim against Benxi upon which relief can be granted.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief." *Rothenberg v. Stone*, 234 F. Supp. 2d 217, 220 (E.D.N.Y. 2002) (citations omitted). In deciding a motion to dismiss, "the Court must confine its consideration 'to facts stated on the face of the complaint . . . [,]' accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id*. (citations omitted). Although a court must assume as true all facts alleged, it is not proper "to assume that the [plaintiff] can prove any facts that [it has] not alleged." *Assoc. General Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983). " '[A] complaint which

consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).' " *Status Intern. S.A. v. M & D Maritime Ltd.*, 994 F. Supp. 182, 185 (S.D.N.Y. 1998) (quoting *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996)).

The standard for pleading a *prima facie* claim in an admiralty case in which an attachment is sought is higher than in other civil cases. Rule E provides that:

> . . . the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

Fed. R. Civ. P. Supp. Rule E(2)(a). "This standard . . . is more stringent than the pleading requirements of the Federal Rules of Civil Procedure." *U.S. v. 4492 South Livonia Road*, 889 F.2d 1258, 1266 (2d Cir. 1989). "Ordinary notice pleading does not satisfy the stringencies of these rules. . . . This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings." *P.R. Ports Auth. v. BARGE KATY-B*, 427 F.3d 93, 105 (1st Cir. 2005) (citation omitted); *see also Dolco Inv., Ltd. v. Moonriver Development, Ltd.*, 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007). The allegations in the Complaint are insufficient to state a claim against Benxi under this stringent standard.

Afrodite alleges that Defendant Shine Star Sea-Transport Pte. Ltd. ("Shine Star") has wrongfully failed to pay charter hire allegedly due under a time charter party between Afrodite, as owner, and Shine Star, as charterer, for the M/V ALTAIR. *See* Complaint ¶¶ 8 & 14. Afrodite also alleges that:

> Defendants NINGBO, SHENYANG, BENXI and RILICO were the shippers of the cargoes loaded onboard the M/V ALTAIR at Llanyungang and Xiangang, China.

\* \* \*

3

>Pursuant to the terms of the Congenbill 1994 Bills of Lading Nos. LJ01-05, LJ08, LJ10, LJ13, LJ15-31 (issued at Llanyungang) and Bills of Lading Nos. XJ01A-C, XJ02, XJ07-8, XJ10-17, XJ18A-C, XJ19A-B, XJ20-28 (issued at Xiangang), Defendants NINGBO, SHENYANG, BENXI and RILICO became liable, jointly and severally, to AFRODITE, under English law, to pay any unpaid hire due and owing from Defendant SHINE STAR.
>
>* * *
>
>Plaintiff AFRODITE has demanded payment from NINGBO, SHENYANG, BENXI and RILICO of the sum 585,953.69, but despite having made due demand, Defendants, in breach of the terms of the subject Bills of Lading, have refused or otherwise failed to pay.

*Id*. ¶¶ 11, 13 & 16.

These allegations fail to allege the circumstances from which Afrodite's claim against Benxi arises with the particularity required by Rule E. Neither the terms of the charter party nor the bills of lading on which Afrodite relies are alleged. Given the allegation that Shine Star was the time charterer and the allegation that Benxi shipped cargoes under a bill of lading, the claim that Benxi is liable to Afrodite for the allegedly unpaid charter hire makes no sense. Where a vessel is under time charter, the remuneration paid by the charterer to the vessel owner is called "hire." *See* Stewart C. Boyd, Andrew S. Burrows and David Foxton, *Scrutton on Charterparties* 63 (20th ed.); *Itex Itagrani Exports SA v. Care Shipping Corp. ("The CEBU")*, [1990] Lloyd's Rep. 316 (Q.B. Com. Ct.).[1]  In contrast, the remuneration paid under a bill of lading is called "freight." *See The CEBU*, [1990] Lloyd's Rep. 316.

Other than the conclusory allegation that Benxi is "jointly and severally" liable to it "[p]ursuant to the terms" of the bills of lading, Afrodite fails to adequately allege how Benxi, as a purported shipper, is liable for the hire allegedly due from Shine Star under the charter party.

---

[1] Copies of these authorities are attached as Exhibits "A" and "B" to the Declaration of Kevin J.B. O'Malley in Support of in Support of Defendant Benxi Northern Steel Pipes Co. Ltd.'s Motion to Dismiss and to Vacate Processes of Maritime Attachment and Garnishment, executed on March 10, 2008.

4

Afrodite does not allege "the circumstances from which the claim arises with such particularity that [Benxi] will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."  Fed. R. Civ. P. Supp. Rule E(2)(a).  For example, Afrodite has not: (1) attached to the Complaint either the charter party or any of the numerous bills of lading referred to in the Complaint; (2) specified which of the bills of lading allegedly named Benxi as a shipper; or (3) stated the terms in those bills of lading that purportedly require Benxi to pay any unpaid hire.  *See*, *e.g.*, *Caterpillar Financial Services Corp. v. Charter Connection Corp.*, No. 07 CV 767, 2007 WL 1381612, at *2 (S.D. Cal. May 4, 2007).  The Complaint is inadequate as against Benxi because "[o]rdinary notice pleading does not satisfy the stringencies of" Rule E.  *BARGE KATY-B*, 427 F.3d at 105.

The claim against Benxi should be dismissed because the allegations in the Complaint fail to state a claim against Benxi with the particularity required by Rule E.  Having failed to state a claim against Benxi, Afrodite is not entitled to relief under Rule B.  Therefore, the maritime attachment should be vacated.

      A.      **There Is No Basis For The Claim Against Benxi**

The claim against Benxi should also be dismissed because there is no legitimate basis therefor.

On or about April 25, 2007, Benxi sold a shipment of steel pipes to East Diamond Inc. ("East Diamond").  *See* Declaration of Wang Lianxue in Support of Motion to Dismiss ("Lianxue Decl."), executed on February 28, 2008, ¶ 4.  The shipment, which consisted of 105 pieces weighting a total of 249.47 MT, was sold to East Diamond "free on board" ("F.O.B.").  *See id*. ¶ 5.  The F.O.B. point was the port of Tianjin.  *See id*.  The shipment was tendered by Benxi to Asia Access Express Co. Ltd. ("Asia Access"), a freight forwarder, at the port of Tianjin.  *See id*.

¶ 6. Asia Access then issued a bill of lading to Benxi (B/L No. AAL/JED 040024). *See* Exhibit "A" to Lianxue Decl.

As it was an F.O.B. seller, Benxi is not responsible for any of the shipping costs (*i.e.*, freight or hire) associated with the cargo of steel pipes sold to East Diamond and shipped aboard the M/V ALTAIR. *See*, *e.g.*, Ademuni-Odeke, *Insurance of F.O.B. Contracts in Anglo-American and Common Law Jurisdictions Revisited: The Wider Picture*, 31 Tul. Mar. L.J. 425, 431 (Summer 2007) ("The essence of the f.o.b. contract is that the price paid to the seller includes all costs up to and including loading the goods onto an overseas vessel nominated by the buyer; property and risk normally pass to the buyer at this point, and all subsequent expenses are to be charged to the buyer's account."); "Free on Board," *Black's Law Dictionary* (8th ed. 2004) ("The buyer is responsible for all costs of carriage."). Thus, Benxi bears no liability in connection with the cargo of steel pipes shipped aboard the M/V ALTAIR. Therefore, the claim against Benxi should be dismissed and the maritime attachment should be vacated.

## POINT II

### IN THE ALTERNATIVE, THE AMOUNT OF SECURITY SHOULD BE REDUCED

In the alternative, if the Court does not vacate the attachment, then it should reduce the amount of security that Afrodite is allowed to seek from Benxi. Afrodite currently seeks, and the Court has issued an order allowing it, to attach property belonging to Benxi in the amount of $793,131.17. That amount is excessive and should be reduced.

"Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given . . . ." Fed. R. Civ. P. Supp. Rule E(6). As recently explained by Judge McMahon, the Court:

> . . . is required to determine whether the amount attached is "excessive" or "reasonably necessary to secure the plaintiff's claim." This does not require the plaintiff to prove its damages with "exactitude." However, "the court must be satisfied that the plaintiff's claims are not frivolous."

*Ronda Ship Management Inc. v. Doha Asian Games Organising Committee*, 511 F. Supp. 2d 399, 405-06 (S.D.N.Y. 2007) (citations omitted).

Benxi is only one of four alleged shippers named as a defendant in the Complaint. *See* Complaint ¶ 11. Accordingly, its alleged cargo represented only a portion of the total cargo shipped aboard the M/V ALTAIR.[2] While it is Benxi's position that it is not liable for any of the unpaid hire allegedly due under the charter party, at the very least it should not, for purposes of a Rule B attachment, be held accountable for the full amount of charter hire allegedly due to Afrodite. It can only be responsible, if at all, for the value of the freight for the cargo shipped aboard the M/V ALTAIR under the bill of lading allegedly naming Benxi as a shipper, an amount which is substantially less than the amount of hire sought by Afrodite.

Benxi, as an F.O.B. seller, is not responsible for any of the shipping costs associated with the cargo of steel pipes sold to East Diamond and shipped aboard the M/V ALTAIR. *See, e.g.*, Ademuni-Odeke, *supra*; *Black's Law Dictionary*, *supra*. Accordingly, Benxi is not liable for freight under the bill of lading much less the charter hire sought by Afrodite. However, even assuming, *arguendo*, it were and that Afrodite has stated a claim against Benxi sufficient to support a Rule B attachment, the security that Afrodite should be able to seek from Benxi should

---

[2] For the reasons explained *supra*, Benxi denies that it shipped any cargo aboard the M/V ALTAIR.

not exceed the value of the freight for the cargo shipped under the bill of lading allegedly naming Benxi as a shipper, or $50,891.88.[3]

## CONCLUSION

For the foregoing reasons, the claim asserted in the Second Amended Verified Complaint against Defendant Benxi Northern Steel Pipes Co. Ltd. should be dismissed and the Processes of Maritime Attachment and Garnishment issued against that defendant should be vacated. In the alternative, the amount of security that can be sought from Benxi should be reduced.

Dated: March 10, 2008
      New York, New York

                        Respectfully submitted,

                        NICOLETTI HORNIG & SWEENEY

                        *Attorneys for Defendant*
                          *Benxi Northern Steel Pipes Co. Ltd.*

                        By:   /s Kevin J.B. O'Malley
                                  Kevin J.B. O'Malley
                                  Wall Street Plaza
                                  88 Pine Street, Seventh Floor
                                  New York, New York 10005-1801
                                  (212) 220-3830

---

[3] The cost to ship the steel pipes was approximately US$204.00 per metric ton. *See* Lianxue Decl. ¶ 7.