UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
AFRODITE SEA TRADE S.A.

Plaintiff

-  against -

SHINE STAR SEA-TRANSPORT PTE LTD
NINGBO MINMETALS & MACHINERY
IMP. & EXP. CORP., SHENYANG SANYO
BUILDING MACHINERY CO. LTD., BENXI
NORTHERN STEEL PIPES CO. LTD. and
RILICO SINGAPORE PTE. LTD.

Defendants
--------------------------------------------------------

_____

THIS IS THE EXHIBIT MARKED
"RAH 1"
_____



# Time Charter

### GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1  **This Charter Party**, made and concluded in *Lausanne*.............................................................*23rd day of March*...........................................19 *2007*
2  Between Messrs. *Afrodite Seatrade S.A., Monrovia / Liberia*
3  Owners of the good *Liberia* flag ................... Steamship/Motorship *" A L T A I R " - For Vessel's Description see Clause 29 -* of .....................
4  of *35.687* .......... tons gross register, and *22.085* ........... tons net register, having engines of ....................................................... indicated horse power
5  and with hull, machinery and equipment in a thoroughly efficient state, and classed *DNV* ............................................................................................
6  at ....................................................... of about *2.793.380* ..... cubic feet ~~bale~~ *grain* capacity, and about *64.120* ........... tons of 2240 lbs.
7  deadweight capacity (cargo and bunkers, including fresh water and stores *and constants* ~~not exceeding one and one-half percent of ship's deadweight capacity~~,
8  ~~allowing a minimum of fifty tons~~) on a draft of *13.076* ..... feet *meters* ................... ~~inches~~ on *Salt Water* Summer freeboard, ~~inclusive of permanent bunkers~~
9  ~~which are of the capacity of about~~ ............................................... ~~tons of fuel~~, and capable of steaming, fully laden, under good weather
10 conditions about *12.0* knots on a consumption of about *39 metric tons of IFO (RME 25) + about 3,5 metric tons MGO (DMA)* ~~best Welsh coal~~
11 ~~best grade fuel oil best grade Diesel oil,~~
12 now *trading* ...........................................................................................................................................................................................
13 ................................................ and *Shine Star Sea-Transport Pte Limited* ... Charterers of the City of *Singapore* ...............................
14 **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
15 ~~about~~ *One Time-Charter trip from North China to Jeddah via safe anchorage(s), safe berth(s), safe port(s), always within*
   *Institute Warranty Limits, always afloat, with lawful harmless cargo (intention general cargo and steel products), duration*
   *about 60 days without guarantee - Trading Exclusions : Ethiopia, Somalia, Sudan, Yemen -* ~~within below mentioned trading limits~~
16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17 the fulfilment of this Charter Party.
18 Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot Pusan, South Korea at any time day, night,*
19 *Sundays and holidays included -*
20 ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), in~~
21 ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 6.~~ Vessel on her delivery *and during the*
   *service* to be
22 ready to receive cargo with clean-swept *dried* holds and tight, staunch, strong and in every way fitted for the *normal* service, having water ballast, winches and
23 donkey boiler  with sufficient steam power, or if not equipped with donkey boiler, ~~then other power sufficient to run all the winches at one and the same~~
24 ~~time~~ (and with full complement of officers, seamen, engineers and ~~firemen~~ *crew members taking care firemen duties as per vessel's class*
   *requirements* for a vessel of her tonnage), to be employed, in carrying lawful merchan-
25 dise *cargoes always to be within vessel's physical limitations. Owners warrant that in case of lightweight cargoes there is no need*
   *to flood any of the cargo compartments*, including petroleum or its products, in proper containers, excluding ...........................
26 (vessel is not to be employed in the carriage of Live Stock, ~~but Charterers are to have the privilege of shipping a small number on deck at their risk~~,
27 ~~all necessary fittings and other requirements to be for account of Charterers~~), in such lawful trades, between safe port and/or ports in British North
28 *America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or*
29 *Mexico, and/or South America* always afloat with *Trading Exclusions as per Clause 61 -* ~~and/or Europe~~
30 ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~
31 ~~October 31st and May 15th, Hudson Bay and all wharfs ports also excluding when out of season, White Sea, Black Sea and the Baltic.~~
32 ...........................................................................................................................................................................................
33 ...........................................................................................................................................................................................
34 ...........................................................................................................................................................................................
35 as the Charterers or their Agents shall direct, on the following conditions:
36 1. That the Owners shall provide and pay for all provisions, wages *including crew overtime, immigration related to crew changes* and
   consular shipping and discharging fees of the Crew *and all other charges related to the Master, Officers and crew*; shall pay for the
37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water *and garbage removal, but if any*
   *compulsory charges/expenses to be for Charterers' account* and maintain her class and keep
38 the vessel in a thoroughly efficient state in hull *and cargo spaces*, machinery and equipment *with all necessary certificates to comply with*
   *current requirements at ports of call and canals* for and during the service, *failing which Owners shall be responsible for all time lost*
   *and direct expenses incurred hereby.*
39 2. That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, *customary* Pilotages, Agencies,
   Commissions, *taxes/dues on cargo and/or freight, state and municipal taxes, canal dues*
40 Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into
41 a port for causes for which ~~vessel is~~ *Owners are* responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43 charter to be for Charterers account. ~~All other fumigations to be for Charterers account after vessel has been on charter for a continuous period~~
44 ~~of six months or more.~~

45   Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46   Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47   for dunnage, they making good any damage thereto.

48   ~~3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~
49   ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than~~ .................................. tons and not more than
50   .................................. tons and to be re-delivered with not less than .................................. tons and not more than .................................. tons. *See Clause 31* -

51   4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of **U.S.$ 27'000.- (Twenty-seven thousand U.S. Dollars)**
52   daily including overtime - First 15 days hire + redelivery bonus + bunkers on delivery value to be paid to Owners' nominated
      bank within 3 banking days after vessel's delivery and receive Owners' invoice. Then hire to be paid every 15 days in advance.
      ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~
53   .................................. ~~summer freeboard, per Calendar Month,~~ commencing on and from the day of her delivery, as aforesaid, and at
54   and after the same rate for any part of a day month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary
55   wear and tear excepted, to the Owners (unless lost) at *on dropping last outward sea pilot Jeddah at any time day, night, Sundays and*
56   *holidays included - Charterers to pay together with first hire U.S.$ 108'000.- (One hundred and eight thousand U.S. Dollars) as*
      *Redelivery Bonus -* unless otherwise mutually agreed. Charterers are to give Owners not less than *10 approximate and 5/3/2/1* days
57   notice of vessels expected date of re-delivery, and probable port.

58   5. Payment of said hire to be made *as per Clause 50* ~~in New York~~ in cash in United States Currency, *every 15 days* ~~semi-monthly,~~ in advance, and for
      the last *15 days* half-month or
59   part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
60   due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the
61   hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-
62   terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~
63   ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m. but if required by Charterers, they~~
      ~~to have the privilege of using vessel at once, such time used to count as hire.~~

64   Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, *provided Owners'*
      *written confirmation has been given* subject
66   to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application
67   of such advances.

68   6. That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe place where it is customary for a ship of*
      *this size to load/discharge/lighten* that Charterers or their Agents may
69   direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such places where it is customary for similar size vessels to safely~~
70   ~~lie aground.~~

71   7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also
72   accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73   tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~
74   ~~paying Owners~~ .................................. ~~per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~
75   ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~

76   8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and
77   boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78   agency; and Charterers are to load, stow, and trim *and discharge, lash/unlash, secure and tally* the cargo at their expense under the supervision of the
      Captain, who is to sign Bills of Lading for
79   cargo ~~as presented,~~ in conformity with Mate's or Tally Clerk's receipts.

80   9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81   receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82   10. *See Clause 67* - That the Charterers shall have permission to appoint a Supercargo, *at Charterers' risk and expense* who shall *supervise*
      *the loading and discharging operations.* ~~accompany the vessel and see that voyages are prosecuted~~
83   ~~with the utmost despatch.~~ He is to be furnished with free accommodation, and same fare as provided for Captain's table. Charterers paying at the
84   rate of ~~$1.00~~ *U.S.$ 10.00* per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally
85   Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate per meal, for all such victualling.

86   11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the
87   Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88   terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-
89   sumption of fuel.

90   12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91   13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~ ..................................
92   ..................................
93   ~~on giving written notice thereof to the Owners or their Agents~~ .................................. ~~days previous to the expiration of the first named term, or any declared option~~

94   14. That if required by Charterers, time not to commence before *00.01 hours local time on the 1st April, 2007* and should vessel
95   not have given written notice of readiness on or before *10th April 2007 - 24.00 hours local time* - ~~but not later than 4 p.m.~~ Charterers or
96   their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

97   15. That in the event of the loss of time from deficiency *and/or default of Owners' men or deficiency* of men or stores, fire,
      breakdown or damages to hull, machinery or equipment,
98   grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause
99   preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; *until the vessel has returned to the same or*
      *equivalent position* and if upon the voyage the speed be reduced by
100  defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, *and all extra undisputed expenses sustained by*
      *aforementioned cause to be for Owners' account* and the cost of any extra fuel consumed in consequence
101  thereof, and all extra expenses shall be deducted from the hire.

2

11

16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas, Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property.

17. *Arbitration - See Clause 73 -* ~~That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York,~~

~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrator shall be commercial men.~~

18. That the Owners shall have a lien upon all cargoes, and all sub-freights *and sub-hires* for any amounts due under this Charter, including General Aver-

age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel.

19. ~~That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and Crews' proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of York-Antwerp Rules *1974 in London s well as later amendments* 1924, at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by those~~

~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier, or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in United States money.~~

~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or ships belonged to strangers.~~ *Hire not to contribute to General Average.*

Provision as to General Average in accordance with the above *and the New Jason Clause, the Blame-to-Blame Collision Clause* are to be included in all bills of lading issued hereunder.

20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the cost of replacing same, to be allowed by Owners.

21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.

*No dry-docking during the period of this Charter-Party except in case of emergency* ................................................................................

22. ~~Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to three tons, also providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for same, otherwise equipment and gear for Charterers' lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for night work, and vessel to give use of electric light where so fitted, but any additional lights over those on board to be at Charterers' expense. The Charterers to have the use of any gear on board the vessel.~~

23. ~~Vessel to work night and day, if required by Charterers, and all winches to be at Charterers' disposal during loading and discharging. Number to provide one winchman per hatch at work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen, deck hands and deckaymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the port, or labor unions, prevent crew from driving winches, then Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or insufficient power to operate winches, Owner to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned thereby.~~ *See Clause 39 -*

24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels, etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both of which are to be included in all bills of lading issued hereunder;

U. S. A. Clause Paramount

This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

Both-to-Blame Collision Clause

~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.~~ *See Clause 47 -*

25. The vessel shall not be required to enter any ice-bound port, *not to force ice, nor to follow ice-breakers* or any port where lights or light ships have been or are about to be with-

drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the port or to get out after having completed loading or discharging.

3

170    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171    navigation of the vessel, *seaworthiness and maintenance of the vessel*, insurance, crew, *acts of pilots and employment of tugs* and all other
matters, same as when trading for their own account.
172    27. A commission of 2 1/2 *1.25* per cent is payable by the Vessel and Owners to *Messrs. Ifchor S.A., Lausanne*
173    .........................................................................................................................................................................................
174    on hire *and redelivery bonus* earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175    28. An address commission of 2 1/2 *3.75* per cent payable to *Charterers*...... on the hire *and redelivery bonus* earned and paid under this Charter.

*Clauses No 29 to 87, both inclusive, as attaced are to be fully incorporated in this Charter-Party.*

---

*THE OWNERS :*                                    *THE CHARTERERS :*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

4

**ADDITIONAL CLAUSES TO THE CHARTER-PARTY**
**M/V " A L T A I R "**
**DATED LAUSANNE, 23RD MARCH, 2007**

**Clause 29**
Vessel's Description :

**M/V " ALTAIR** " Ex Mentor,
Port of registry : Monrovia, Liberia
Official Number : 8092
Flag : Liberia
Call sign : E L H F 5
IMO Number : 7928110
Type : Bulk carrier (gearless)
Classification : DNV, + 1A1 Bulk Carrier ESP HC-E
Built : March 1981
Built, place : Burmeister and Weins Skibsvaerft A/S, Copenhagen
Type / number engine : Mitsui B+W 5180 GFCA, 5 cyl cross head,
single acting, MCR 12,600 bhp 90 rpm
Type of propellor : screw type/one, 4 blades
Hatch covers : side rolling type
Loa / LPP : 225.000 meters / 213.700 meters
Breadth moulded : 32.240 meters
Depth moulded : 18.000 meters
Panama DWT : 55.750 metric tons DWAT

|                 | Drafts (M) | Deadweight (kt) |
|-----------------|------------|-----------------|
| Summer :        | 13.076     | 64,120          |
| Tropical :      | 13.351     | 65,825          |
| Winter :        | 12.807     | 62,400          |
| Fresh water :   | 13.379     | 64,120          |
| Tropical fresh :| 13.651     | 65,825          |

Tonnages
ITC GRT / NRT :    35,687 / 22,085
Panama :           36,878 / 29,470.57
Suez :             36,543.36 / 32,355.71

Capacity table

|                | Grain | | Bale | |
|----------------|-------------|------------|--------------|------------|
|                | Cubic meters | Cubic feet | cubic meters | cubic feet |
| No 1 cargo hold | 10.200 | 360.210 | 9.600 | 339.020 |
| No 2 cargo hold | 11.540 | 407.530 | 10.970 | 387.400 |
| No 3 cargo hold | 11.260 | 397.640 | 10.760 | 379.985 |
| No 4 cargo hold | 11.260 | 397.640 | 10.760 | 379.985 |
| No 5 cargo hold | 11.600 | 409.650 | 11.100 | 391.995 |
| No 6 cargo hold | 11.600 | 409.650 | 11.100 | 391.995 |
| No 7 cargo hold | 11.640 | 411.060 | 11.200 | 395.525 |
| Total :         | 79.100 | 2.793.380 | 75.490 | 2.665.905 |

Hatch dimensions : No 1-7 : 14.400 X 15.000 M

Strength
Tank-top      No 2,4,6          18.00 T/sqm

### M/V " A L T A I R " - C/P DATED 23.03.2007

|                | No 1,3,5,7 | 27.50 T/sqm |
|----------------|------------|-------------|
| Upper deck :   |            | 2.50 T/sqm  |
| Hatch covers : |            | 1.75 T/sqm  |

Constants : about 500 tons excluding Fresh water

P. and I. Club : The American Club

About 12 knots on about 39 metric tons IFO 180 (RME 25) + about 3.5 metric tons MGO (DMA) idle / in port and at sea and in port vessel burns about 1.65 metric tons MGO per hour in main engine when maneuvering / navigating in confined water, rivers, estuaries, canals and when entering / leaving port

Speed / consumption basis good weather conditions of up to Beaufort Force 4 and Douglas Sea State 3 and no negative influence by swell / adverse currents

All details " about " wog

Owners name :      Afrodite Seatrade S.A., Monrovia

Charterers :   Shine Star Sea-Transport Pte., Ltd, Singapore
               #04-230 Faber House, 230 Orchard Rd., Singapore 238854
               c/o: ZG 13-C Liang Yun Hotel, NO 12 Wuwu Road Zhongshan District,
               Dalian 116001, People's Republic of China
               Tel :   +86-411-82128508
               Fax :   +86-411-82128509

### Clause 30
#### Notices on delivery
Owners / Master to give Charterers 5 / 3 / 2 / 1 day(s) delivery notice in advance.

### Clause 31
#### Bunkers
Vessel to be delivered with about 600 / 700 metric tons IFO and about 150 / 200 metric tons MGO, and to be redelivered with about 150 / 200 metric tons IFO and about 20 / 30 metric tons MGO.

Bunker prices both ends to be U.S.$ 364.- per metric ton IFO, U.S.$ 594.- per metric ton MGO.

Charterers to take over and pay for value of bunker on delivery together with first hire payment. Charterers prior to delivery have the option to bunker the vessel for their account, provided same does not interfere with Owners' operations. Owners are allowed to replenish bunkers before redelivery provided same does not interfere with Charterers' operations.

Charterers to deduct from last sufficient hire payment(s) value of expected bunkers on redelivery.

Charterers have the option to bunker in Port Said / Suez in accordance with 180 CST and MGO Egyptian specification and at Jeddah in accordance 180 CST and MGO Saudi Aramco specification

### Clause 32

- 2 -

6

**M/V " A L T A I R " - C/P DATED 23.03.2007**

The vessel to deliver with dry and odourless holds, suitably cleaned to the satisfaction of an independent inspector for carrying general cargo. The independent inspector to board the vessel upon arrival at first load port and should the vessel fail to pass the inspection the vessel to be off-hire from the time of rejection until she passed the inspection. In case of dispute then both parties will mutually appoint an independent surveyor whose opinion will be accepted by both parties.

**Clause 33**
**On-hire/off-hire surveys**
Charterers and Owners to hold joint on-hire and off-hire bunker and condition surveys on delivery and redelivery by a mutually accepted Surveyor, expenses to be shared equally. Time for on-hire survey to be for Owners' account but if Charterers' operations are note prevented the vessel to remain on hire, and time for off-hire survey to be for Charterers' account. On-hire survey to take place at first load port.

**Clause 34**
**Certificates**
Vessel to be fitted according to Panama Canal and Suez Canal regulations now in force for the transit of the Canal and to have on board a current valid Suez Canal and Panama Canal certificates and all certificates necessary to operate in any port within trading limits. Owners to pay all extra expenses due to their failure to provide such certificates.

**Clause 35**
**Fumigation**
The vessel to have valid Deratisation Exemption Certificate for the period of the Charter Party but, if fumigation should be required during Charter Party period, then the provisions of Clause 2 to apply. (See lines 42/43).

**Clause 36**
**Charterers' marks**
Deleted.

**Clause 37**
**BIMCO ISPS CLAUSE**

(A)     (i) From the date of coming into force of the International code for the security of ships and of port facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the vessel and thereafter during the currency of this charter party, the owners shall procure that both the vessel and "The Company" (as defined by the ISPS code) shall comply with the requirements of the ISPS code relating to the vessel and "The Company". Upon request the owners shall provide a copy of the relevant International ship security certificate (or the interim International ship security certificate) to the Charterers. The owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this charter party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the owners or "the company" to comply with the requirements of the ISPS code or this clause shall be for the Owners' account.

(b)     (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master.

- 3 -

## M/V "A L T A I R " - C/P DATED 23.03.2007

Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this charter party contain the following provision:

"The Charterers shall provide the owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the owners".

(i.) except as otherwise provided in this charter party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this clause shall be for the Charterers' account.

(c) Notwithstanding anything else contained in this charter party, all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the owners' negligence. All measures required by the owners to comply with the ship security plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this clause, the other party shall indemnify the paying party.

### Clause 38
### Eligibility for bunkers in USA (not applicable)
Deleted.

### Clause 39
### Assistance by crew
Vessel, with officers and crew, to work night and day, Saturday afternoon, Sundays and holidays, if required by Charterers.

The Time-Charter hire, as per Clause 4, is inclusive of all overtime work done by Master, officers and crew. This work includes, but is not limited to, all work on ordinary daytime and overtime (as above in connection with assistance in preparing the vessel for cargo work.

(It is understood this Clauses refers to crew work only and not to any materials required from ashore or shore labour).

Officers and crew to make preparation for shaping up the ship's hatches as much as possible prior to arrival at loading and/or discharging ports, docks and/or places so as to immediately commence loading and/or discharging operations, provided personnel available, weather permitting and permitted by local regulations. In such cases the vessel not to be responsible for quality and duration of the work.

### Clause 40
### Boycott
In the events of loss of time due to blockade or boycott of the vessel in port or place by shore labour or other (whether arising from Government restrictions or not) by reason of:

a) The vessel's flag or Ownership/Management/operation or control;
b) The terms and condition on which the members of the crew are employed;
c) The trading of this vessel under present Ownership'

- 4 -

8

## M/V "A L T A I R" - C/P DATED 23.03.2007

d)    Deleted
e)    Any alleged physical or documentary deficiency in the relation to the vessel's
       safety, unless within its described capacity;
f)     By any other reason for which the Charterers cannot be considered responsible,
       but Owners are directly responsible for;

Payment of hire shall cease for the time thereby lost and all relative direct expenses to
be for Owners' account.

### Clause 41
### I.T.F.
Deleted.

### Clause 42
### Off-hire
Should the vessel put back while on voyage by any reason mentioned in Clause 15, the
hire shall be suspended from the time the voyage is interrupted until she is again
efficient in the same or equidistant position and the voyage resumed therefrom.

### Clause 43
Deleted.

### Clause 44
Deleted.

### Clause 45
### War Clause
Basic war insurance and war bonus to officers and crew to be for Owners' account. Any
increase in Insurance Premiums including Blocking and trapping and in crew war bonuses
while the vessel trades for Charterers to be borne by Charterers as applied by Lloyds or
other Underwriters and always against Brokers' invoice. Should such increase exceed the
London Market Charterers have the option to compare same with the other insurance
company/Underwriter of same status within the London Market and to propose same to
Owners with the aim of reducing the insurance costs. The Charterers to have the benefit
of any return insurance premium and/or rebate receivable by Owners from
underwriters/insurance as and when received from the underwriters/insurance by reason
of war risk insurance.

Vessel's Hull and Machinery value / Total entered value : U.S.$ 11'500'000.-.
Conwartime 1993 as attached to apply .

### Clause 46
### Bills of Lading
Master to sign Congenbill Edition 1994 Bills of Lading, in strict conformity with the Mate
receipts, marked " freight payable as per Charter-Party dated 23.03.2007 and or freight
prepaid and/or freight collect) incorporating the Charter-Party between Owners and
Time-Charterers.

No Liner or Through Bills of Lading to be issued.

### Clause 47
Deleted.

- 5 -

9

## M/V " A L T A I R " - C/P DATED 23.03.2007

**Clause 48**
The New Jason Clause and the New Both-to-Blame Collision Clause as attached to be incorporated in this Charter Party.

### NEW BOTH-TO-BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Bills of Lading falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:-

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier in the Management of the ship, the Owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the Owners of said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of said goods and set off recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or Carrier."

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully, as if the said saving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or Owners of the goods to the carrier before deliver.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

**Clause 49**
**Arrest**
Should the vessel be arrested during the currency of this Charter Party at the suit of any persons having or purporting to have a claim against or any interest in the vessel, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest or remains unemployed as the result of such arrest and the Owners shall reimburse to Charterers any expenditure which they may incur under this Charter Party in respect of any period during which, by virtue of the operation of this Clause, not hire is payable, unless caused by Charterers or their servants.

**M/V " A L T A I R " - C/P DATED 23.03.2007**

**Clause 50**
**Hire Payment**

Owners banking details :

HSBC Bank
Piraeus Branch
93 Akti Miaouli
18538 Piraeus - Greece
Swift Address : MIDLGRAA
Account Number : 001-051200-036
IBAN : GR8407100010000001051200036
In favour of : Afrodite Seatrade S.A.
Reference : M/V " Altair " / Shine Star - C/P dated 23.03.2007

Payment of the last month's hire to be made taking into account probable date of redelivery also bunkers on redeliver. Charterers to pay the agreed gross ballast bonus together with first hire payment.

Referring to lines 60 and 61: Where there is any failure to make punctual and regular payment including first hire payment, due to weekends or omission of Charterers' employees, bankers or agents or otherwise for any reason where there is absence of intention to fail to make payment as set out, Charterers shall be given by Owners three banking working days' notice to rectify the failure and where so rectified, the payment shall stand as punctual and regular payment.

**Clause 51**
**Smuggling**
Any delay, expenses or fines incurred on account of smuggling, if caused by the officers and crew to be for the Owners' account.

**Clause 52**
Owners to supply and pay for lubricating oil.

**Clause 53**
**Damage to the vessel**
Notwithstanding anything else to the contrary contained in this Charter Party, it is expressly agreed that the Charterers shall not be responsible for any damage caused by stevedores to the vessel unless the Master obtain the written acknowledgement of the damage and liability from the concerned stevedores and notified the Charterers or their Agents and the concerned stevedores of such damage within 24 hours from the occurrence. Should any damage caused to the vessel or her fittings by the stevedores, Master has to try to let stevedore repair such damage and try to settle the matter directly with them. Charterers and/or their Agents to do their best efforts to assist Master to settle such matter of damage. In case of hidden damages same to be reported upon finding same, but latest prior to redelivery. Any stevedore damage effecting seaworthiness or cargo worthiness to be repaired prior to redelivery at Charterers time, risk and expense. Other damage, if not repaired by the time of redelivery to be listed in off-hire report and Charterers to compensate Owners on the basis of the cost of repairs as estimated by an independent and jointly appointed surveyor.

**Clause 54**
All papers, abstracts, repair-lists, damages etc. to be supplied in English.

- 7 -

**M/V " A L T A I R " - C/P DATED 23.03.2007**

**Clause 55**
Deleted.

**Clause 56**
**Charterers' gear/supplies**
Charterers, at their time, risk and expenses, to take ashore before redelivery any dunnage, walking boards, slings, tarpaulins etc., supplied by them during the Charter, fair wear and tear always to apply.

**Clause 57**
**Hold cleaning**
Charterers to have the option of redelivering the vessel with unclean holds in which case Charterers paying to Owners a lumpsum of U.S.$ 5'000.- thereof excluding of dunnage and lashing.

Charterers to remove from the vessel prior to redelivery, at their time and expense all dunnage and lashing / securing materials, failing which the vessel to remain on hire until all above have been removed.

If any certificates will be required at the discharging port, for the permission to remove the dunnage / timber / lashing, etc.. Charterers to provide same at their cost / time and expenses.

**Clause 58**
**Cargo claims**
Any liability to third parties for cargo claims shall be borne by Owners/Time Charterers in accordance with the N.Y.P.E. Interclub Agreement amended 1996. The party having paid the claims shall submit same to the other party with supporting documents as soon as possible. Neither party shall between themselves refer to the one year time limit as a defence, provided the rules of the Club permit same.

**Clause 59**
**Return Insurance Premium**
The Charterers to have the benefit of any return insurance premium receivable by Owners from underwriters, as and when received from underwriters, by reason of the vessel being in port for a minimum period of 30 days if the vessel is on full hire for this period and pro rata for the time actually on hire.

**Clause 60**
**Cargo exclusions**
The vessel to be employed in the carriage of lawful merchandise excluding : asphalt, pitch in bulk or drums, bauxite, pyrites, logs, urea, scrap (turnings motor blocks, shavings, oily scrap), naphtha, soda ash, sulphur, fishmeal, nigerseed expellers, sunflower seed expellers, seedcakes, petroleum or its liquid products, turpentine, creosote or creosoted goods except on deck, tar or any of its products, ammonium nitrate, wet hides, explosives, nuclear material, nuclear fuel or radio-active products or waste, calcium carbide, all injurious and dangerous cargoes, charcoal, arms, ammunition, dynamite, TNT, detonators, bombs, black powder, blasting caps, nitroglycerene, inflammable cargo, concentrates, ferro silicon, coke, salt, borax, acids, calcium carbide, raw copra, ammonium sulphate, direct reduced iron / sponge iron, iron briquettes, hot briquetted iron, clays in bulk petcoke, asbestos, calcium hypochlorite otherwise known as calcium oxychloride, bones, bulk cement or cement clinker, quebracho extract, livestock, caustic soda ash, manioc, tobacco, fishmeal, bones, asbestos clays in bulk, raw cotton and resins. Any cargoes carried to be loaded in accordance with IMO regulations and requirements, notwithstanding any other provisions.

- 8 -

12
21

## M/V " A L T A I R " - C/P DATED 23.03.2007

**Clause 61**
**Trading Exclusions**
Intended voyage is from China to Jeddah within the agreed exclusions as per Line 14.

**Clause 62**
**Container Capacity**
Deleted.

**Clause 63**
**G.M.T.**
G.M.T. to be used for the purpose of on/off hire time computation.

**Clause 64**
Deleted.

**Clause 65**
**Agency**
Owners to appoint Owners' Agent to attend all Owners' matters, such as General Average, dry-docking, hospitalisation, repatriation of crew, repair, supply of the vessel's stores and provisions, etc. If Owners are unable to arrange same, Charterers agree to have their Agents attend to such matters with Owners paying Charterers' agents actual expenses and agency according to tariff rate.

When Charterers' Agents are to undertake major matters such as repatriation or others involving large expenditure, Owners to remit funds to Charterers in advance, if requested to do so by Charterers.

However Charterers' Agents to attend minor vessel's business without any special agency fees. Maximum disbursement accounts deductible from hire U.S.$ 500.- (five hundred) per port unless Charterers are able to present Owners with a specified/broken down list of expenses being for Owners' account.

**Clause 66**
**Cargo Inside Containers**
Deleted.

**Clause 67**
**Charterers' communications**
Charterers to pay for communications, victualling, representation and entertainment U.S.$ 1'300.- lumpsum per month or pro rata payable with vessel's hire.

**Clause 68**
Deleted.

**Clause 69**
**Deck cargo**
Charterers have right to option loading intended cargo on deck / hatch cover at Charterers' time, risk, and expense in accordance with vessel's deck / hatch cover strength and stability and deck Bill(s) of Lading to issued. Deck cargo intention equipment, casting iron pipe, vehicle - provided :

- Bill(s) of Lading to be marked / claused as per Owners' P. and I. Club recommendation.
- Deck cargo to be in accordance with vessel's deck and hatch covers strength

- 9 -

*13*

## M/V "A L T A I R" - C/P DATED 23.03.2007

- Deck cargo to be loaded / stowed / secured at Master's / P. and I. Club's Surveyor recommendations
- Receivers of deck cargo to acknowledge their agreement for the transportation on deck.

### Clause 70
### Non-presentation of original Bill(s) or Lading
Vessel to discharge only on presentation of the original Bill(s) of Lading. If the port regulations permit the cargo to be discharged in the custody of the customs then Charterers' Agents which are nominated as GAC in Jeddah to provide Owners with an undertaking that cargo will not be released without the presentation of the original Bill(s) of Lading or against bank guarantee with a wording acceptable to Owners. Any delay's due to above to be for Charterers' account and vessel always to remain on-hire and any extra expenses to be for Charterers' account.

Agents to release the cargo against original Bill(s) of Lading, copy of which they will receive from the Owners or the Master for identification purposes.

### Clause 71
Deleted.

### Clause 72
Deleted.

### Clause 73
### Standard Arbitration Clause (London)
All disputes arising out of this contract which cannot be amicably resolved shall be referred to arbitration in London.

Unless the parties agree upon a sole arbitrator the reference shall be to 2 (two) arbitrators, one to be appointed by each of the parties. The arbitrators shall be commercial men, and the Umpire, if appointed jointly by the two so elected arbitrators, shall be a legal man, and shall be a member of the London Maritime Arbitrators' Association or otherwise qualified by experience to deal with commercial shipping disputes.

The contract is governed by English law and there shall apply to arbitration proceedings under this clause the terms of the London Maritime Arbitrators' Association current at the time when the arbitration proceedings are commenced.

It is further agreed that the 7 (seven) days limited for appointment of the Arbitrator, either originally or by substitutions, shall be changed to 30 (thirty) days.

In the event of claim and counter-claims does not exceed U.S.$ 50,000,00 the parties agree to refer any dispute to a sole arbitrator in accordance with the "small claims procedure" of the LMAA, however should the parties fail to agree on the sole Arbitrator to be appointed, then the matter shall be dealt with according to the standard proceeding referred to hereabove.

### Clause 74
Deleted.

### Clause 75
### House-to-house Bills of Lading
Deleted.

- 10 -

14

**M/V " A L T A I R " - C/P DATED 23.03.2007**

**Clause 76**
**Padeyes**
Charterers have the liberty to weld padeyes into vessel's weather deck and holds to lash containers, cargo and/or equipment at Charterers' risk and expense, but without any harm to epoxies and always under Master's supervision and to his satisfaction. On redelivery such padeyes to be removed at Charterers' expense and in their time, if the Owners so desire.

Alternatively Charterers have the option to redeliver the vessel without removing the padeyes paying Owners U.S.$ 8.00 per padeye.

**Clause 77**
**Stowaways**

a)    The Charterers will endeavour to exercise due care and diligence in preventing stowaways in gaining access to the vessel by means of secreting away in the goods and/or containers as they are loaded on board by the Charterers.

b)    If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the vessel by means other than secreting away in goods and/or containers as they are loaded on board by the Charterers, all time lost and all expense whatsoever and however incurred, including fins, shall be for the Owners' account and the vessel shall be off-hire.

Should the vessel be arrested as a result of stowaways having gained access to the vessel by means other than secreting away in goods and/or containers as they are loaded on board by the Charterers, the Owners shall take all reasonable steps to secure that, within a reasonable time the vessel is released, and at their expense put up security to enable release of the vessel.

However above paragraphs of (b) to remain inoperative and Charterers to be responsible for all consequences, expenses etc. and vessel always on hire case stowaways secreted in goods and/or containers loaded.

**Clause 78**
**Hamburg Rules Clause**
Neither the Charterers nor their Agents shall permit the issue of any Bill of Lading, Waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on Charterers behalf or on behalf of any sub-charterers) incorporating, the Hamburg Rules or any other legislation giving effect to Hamburg Rules or any other legislation imposing liabilities in excess of Hague/Visby Rules.

The Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

**Clause 79**
**Hose Test Clause**
Owners confirm that all hatches are watertight/waterproof . At loading vessel will pass hose test survey on her arrival either in the roads or in load berth.

In case vessels hatches do not pass the hose test (i.e same found not watertight/waterproof) then vessel to be put off hire from the time of failure until when she will pass the test.

- 11 -

**M/V " A L T A I R " – C/P DATED 23.03.2007**

Necessary arrangements to the hatch covers, including use of ramnek tape or expanding foam, to be carried out.

**Clause 80**
In accordance with vessel's P. and I. Club rules, Charterers have to give Owners not less than 72 hours notice, Saturdays / Sundays and holidays excluded ,of their intention to load any steel cargo under this Charter. In the event that steel cargo is loaded under this Charter Party, the Owners will appoint a Surveyor through their P. and I. Club to carry out a pre-loading survey of the cargo under Charterers' time and expenses. The results of surveyor remarks relating to the cargo will be inserted in Mate's receipts and on original Bills of Lading will be claused accordingly.

Steels shall be loaded up to vessel's tank top strength / according to vessel's  trim / stability and according to Owners P. and I. Club instructions. Charterers shall provide sufficient dunnage / lashing / securing to Owners P. and I. Club Surveyor's and Master's full satisfaction. Vessel will trade in seaworthy condition between berths/ ports.

In case of any dispute between Charterers / Shippers and Master / P. and I. Surveyor in connection to the condition of steels / lashing / securing / timber dunnage and loading is delayed because of the above , all time lost to be for Charterers' account and vessel to remain on hire.

**Clause 81**
**Deduction of Owners' account**
The Charterers shall be entitled to deduct from hire payment any disbursement for Owners' account, or estimated amounts of disbursements but maximum up to U.S.$ 500.00 per calling port or any advances to the master including commission thereon, any previous overpayments of hire and any other expenses for Owners' account.

**Clause 82**
**Deviation**
Should the vessel put back whilst on voyage by reason of an accident or breakdown, or in a event of loss of time, either in port or at sea, or deviation upon the course of the voyage caused by sickness, accident or any other form of disability or inability to serve of the Master, Officers, crew or any other person on board the vessel (other than passengers travelling by request of Charterers) or by reason of refusal of the Master, Officers or crew to perform their duties, the hire shall be suspended from the time of the deviation until the vessel is again efficient in he same or equivalent position and the voyage resumed therefrom and all extra expenses incurred including bunkers consumed during the period of suspended hire shall be for Owners' account.

**Clause 83**
**Weather Bureau**
The Charterers may appoint an Independent Weather Routing Bureau (WNI) for advice to the Master during voyages specified by Charterers. If Charterers elect to supply WNI or any other routing service, the Owners will be appointing Messrs. Navitech weather routing service to monitor the vessel's voyage at Owners' account. Evidence of weather conditions to be taken from the vessel's deck and log abstracts, Ocean Routes and Navitech. In the event of a consistent discrepancy between the deck logs / Ocean Routes and Navitech, Charterers are to instruct Ocean Routes immediately upon vessel's redelivery to produce a "PECA" report (performance evaluation comparative analysis) between the two weather routing companies at Charterers' cost.

- 12 -

16

### M/V " A L T A I R " - C/P DATED 23.03.2007

The finding and results of the PECA report to be binding to both parties. In any case , any dispute concerning an u/p claim will be settled no later than 30 days after the vessel has been redelivered.

Under no circumstances are Charterers allowed to deduct from hire payments alleged u/p claims unless owners have agreed in writing for such deduction.

#### Clause 84
When final hire payment is due, Charterers to pay only such amount of hire to cover the true and realistic expected remaining period, taking into consideration the Masters E.T.A. at the discharging port and the Agents information with regards to true estimated discharging time, and the balance thereafter, if any, to be paid on a day by day basis as it becomes due. Charterers are entitled to deduct from last hire payment of hire sufficient funds to cover the counter value of bunkers to be taken over by the vessel on redelivery according to the Master's last noon report, sent to Charterers before last payment, which will be advising  the estimated bunkers on board at redelivery. The Master will be paying in cash for all Owners' matters / items, therefore no deductions from hire to be made. When the vessel is redelivered any differences shall be  refunded by Owners or paid by Charterers as the case may be.

#### Clause 85
The redelivery bonus is calculated on the basis of last discharge port being Jeddah. If Charterers elect or Bills of Lading are nominating a port Northern of Jeddah then Charterers to pay immediately additional redelivery bonus up to Jeddah calculated on the basis of the daily hire plus bunkers consumed.

#### Clause 86
All negotiations and fixture to be kept strictly Private and Confidential.

#### Clause 87
Vessel's holds on delivery to be clean swept, washed down by fresh water and dried up so as to receive Charterers' intended cargo of steel products in all respects, and to pass independent Surveyors' inspections. In case the holds are rejected by the independent Surveyor, then Charterers and Owners to appoint mutually an independent Surveyor whose findings to be binding to both parties.

Otherwise vessel to be part off-hire on hold from time of rejection until pass of the re-inspection and any related expense/time to be for Owners' account.

* * * * * e n d * * * * *

- 13 -

17

**BIMCO STANDARD WAR RISKS CLAUSES FOR
THE CHARTERERS 1993
Code Name: "CONWARTIME 1993"**

(1)    For the purpose of this Clause, the words:

(a) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(b) "War Risks" shall include any war (whether actual or threatened), act or war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to be become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2)    The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(3)    The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

4)    (a) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

(b) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

(5)    If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

18

(6)   The Vessel shall have liberty:-

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and the national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;

(e) to divert and call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(7)   If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(8)   If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter party.

19