296-07/DPM/MAM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AFRODITE SEA TRADE S.A.,

               Plaintiff,

          -against -

SHINE STAR SEA-TRANSPORT PTE. LTD.,        **07 CIV 5626 (DAB)**
NINGBO MINMETALS & MACHINERY IMP. &
EXP. CORP., SHENYANG SANYO BUILDING
MACHINERY CO. LTD., BENXI
NORTHERN STEEL PIPES CO. LTD., and
RILICO SINGAPORE PTE. LTD.,

              Defendants.
-----------------------------------------------------------------x

## MEMORANDUM OF LAW OF PLAINTIFF AFRODITE SEA TRADE S.A. IN OPPOSITION TO THE MOTION TO VACATE OR TO REDUCE ORDER OF ATTACHMENT OF DEFENDANT BENXI NORTHERN STEEL PIPES CO. LTD.

 

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY  10005
Telephone: (212) 425-1900

Of Counsel
Don P. Murnane, Jr.
Manuel A. Molina

NYDOCS1/301231.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………..……………………………………… ii

PRELIMINARY STATEMENT........................................................................ 1

BACKGROUND FACTS ……................................................................... 3


ARGUMENT...................................................................................... 3

## POINT I

VACATUR: PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF
UNDER RULE E (4)(f) AND THE ORDER OF ATTACHMENT
AGAINST BENXI MUST THEREFORE BE MAINTAINED ………............. 2

## POINT II

UNDER ENGLISH LAW, AFRODITE IS ENTITLED TO RECOVER
THE FULL AMOUNT OF OUTSTANDING HIRE FROM BENXI .................... 6

## POINT III

REDUCTION: DEFENDANT HAS NOT SHOWN GOOD CAUSE
WHY THE ORDER OF ATTACHMENT SHOULD BE REDUCED AND
THE AWARD RENDERED BY ARBITRATORS IN LONDON
DEMONSTRATES THAT AFRODITE'S CLAIM FOR DAMAGES
IS NON-FRIVOLOUS…….............................................................. 11


CONCLUSION …....……………………………………………………...... 13

# TABLE OF AUTHORITIES

## Cases

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,
460 F.3d 434 (2d Cir. 2006).............................................................................................. 3

Dolco Inves. Ltd. v. Moonriver Dev. Ltd.,
486 F. Supp. 2d 261 (S.D.N.Y. 2007)...............................................................................3

Dongbu Express Co. Ltd. v. Navios Corp.,
944 F. Supp. 235 (S.D.N.Y. 1996) .................................................................................11

Naias Marine S.A. v. Trans Pacific Carriers Co., Ltd.,
No. 95-10640, 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 10, 2008) .........................9

Ronda Ship Management Inc. v. Doha Asian Games Organising Committee,
511 F. Supp. 2d 399 (S.D.N.Y. 2007)................................................................. 4, 5, 7, 11

Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.,
478 F. Supp. 2d 532 (S.D.N.Y. 2007)......................................................................... 6, 7

T&O Shipping Ltd. v. Lydia Mar Shipping Co., S.A.,
415 F. Supp. 2d 310 (S.D.N.Y. 2006)............................................................................. 6

The Rice Co. v. Express Sea Transport Corp., No. 07-7077,
2007 U.S. Dist. LEXIS 84300 (S.D.NY. Nov. 15, 2007); .........................................11

Tide Line, Inc. v. Eastrade Commodities, Inc.,
No. 06-1979, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006)................................... 3, 4

Transportes Navieros y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.,
No. 07-3076, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) .................................. 3, 5, 6

Plaintiff AFRODITE SEA TRADE S.A. ("Plaintiff" or "Afrodite"), by and through its counsel, Freehill Hogan & Mahar, LLP, hereby submits this memorandum of law in opposition to the motion of Defendant BENXI NORTHERN STEEL PIPES CO. LTD. ("Defendant" or "Benxi") to vacate or to reduce the order of attachment.

## PRELIMINARY STATEMENT

The thrust of Defendant's argument is that Plaintiff cannot recover "hire" from Defendant because Defendant was not the charterer of the vessel but rather the "shipper" of cargo, and hence, it is only required to pay "freight." The argument is frivolous under English law, and indeed, English arbitrators have recently so held against similarly situated shippers in this matter.

Defendant disregards governing English law that the Bill of Lading that forms the contract of carriage between Plaintiff and Defendant, and the contract under which Plaintiff has asserted its claim against Defendant in London arbitration, contains a clause that unambiguously incorporated the relevant charter party and imposed upon Defendant the obligation to pay hire, *not* freight:

> **HIRE** PAYABLE AS PER C/P DD 23.03.07 BETWEEN OWNERS AFRODITE SEATRADE S.A. AND CHARTERERS SHINE STAR SEA TRANSPORT PTE. LIMITED.

(Declaration of Roy Albert Hewett, dated March 24, 2008, ("Hewett Decl."), ¶6 and Ex. RAH2).

The very same position advanced here by the Defendant has been rejected by the London arbitrators presently hearing the claims that Plaintiff has brought against Defendants-Shippers NINGBO MINMETALS & MACHINERY IMP. & EXP. CORP. ("Ningbo") and SHENYANG SANYO BUILDING MACHINERY CO. LTD. ("Shenyang"). Although Plaintiff's claims in the London arbitration are based on separate Bills of Lading, those Bills contain identical

language to that contained in Benxi's Bill. (Hewett Decl., ¶¶13, 17, 18 and Ex. RAH6, ¶¶6, 11-15, 17-19). In an Interim Declaratory Award, dated November 19, 2007 ("the Award"), the arbitrators ruled that, as a matter of English law, Ningbo and Shenyang, as shippers, **can be liable** to pay any hire due under the charter party dated March 23, 2007, as per the express and unambiguous Bill of Lading terms between Afrodite and Ningbo and between Afrodite and Shenyang. (Hewett Decl., ¶¶13, 17, 18 and Ex. RAH6, ¶¶6, 11-15, 17-19).

Benxi has appeared in this action while refusing to arbitrate in London, whereas Ningbo and Shenyang are fully arbitrating the merits of their dispute with Afrodite in London as per the terms of their Bills of Lading. Afrodite is fully secured against Ningbo and only partially secured against Shenyang, but it has seized no assets from Benxi.

Although the dispositive issue before the Court is governed by English law, Benxi fails to submit the declaration of an English law expert in support of its false position. Rather, Defendant relies on its New York counsel's "view" of English law to posit an argument that was squarely rejected on November 19, 2007 by English arbitrators. The motion is frivolous and should be denied.

## BACKGROUND FACTS

For the facts relevant to the disposition of this motion, Afrodite respectfully directs the Court's attention to the Declaration of Mr. Roy A. Hewett.

2

## ARGUMENT

## POINT I

### VACATUR: PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF UNDER RULE E(4)(f) AND THE ORDER OF ATTACHMENT AGAINST BENXI MUST THEREFORE BE MAINTAINED

To sustain its burden and defeat a motion to vacate, Plaintiff only needs to demonstrate that: (1) the cause of action arises within the Court's admiralty jurisdiction; (2) the Defendant cannot be found within the District; and (3) the Defendant has property within this District. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006). Benxi's challenge is directed solely against the first requirement.

Although the *Aqua Stoli* Court did not exactly state what a plaintiff must show to meet this burden, the majority of the courts of this district have adopted a *prima facie* standard. *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06-1979, 2006 U.S. Dist. LEXIS 95870 (S.D.NY. Aug. 15, 2006); *Transportes Navieros y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.*, No. 07-3076, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007); *Dolco Inves. Ltd. v. Moonriver Dev. Ltd.*, 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007). Under this *prima facie* standard, a Rule E(4)(f) hearing is not intended to, and should not, be a fact-intensive inquiry into the underlying merits of plaintiff's claim (especially so where the dispute is subject to arbitration). All that the plaintiff needs to defeat a Rule E(4)(f) motion to vacate is a proper verified complaint. *Tide Line*, 2006 U.S. Dist. LEXIS 95870, *15-16; *Transportes Navieros*, 2007 U.S. Dist. LEXIS 50260, *11.

As Chief Judge Wood has stated:

3

Thus to show that it has a *prima facie* claim, a plaintiff need not provide any supporting evidence; its complaint should suffice.  Furthermore *Aqua Stoli* implies that a plaintiff is likewise ***not required to provide evidence*** showing that it has a claim against defendant to carry its burden under Supplemental Rule E(4)(f).

2006 U.S. Dist. LEXIS 95870, *15-16 (emphasis supplied).

Similarly in *Ronda Ship Management Inc. v. Doha Asian Games Organising Committee*, 511 F. Supp. 2d 399, 403-4 (S.D.N.Y. 2007), Judge McMahon held that, when considering the adequacy of a claim in a maritime vacatur motion, "the *prima facie* standard in the maritime attachment context is a pleading requirement, not an evidentiary standard, and differs from the use of that phrase in other contexts;" hence, "[u]nder this standard, the Court ***looks only to the Complaint*** to determine whether the plaintiff has alleged a valid admiralty claim against the defendant." *Id*. (emphasis supplied).  The Court went on to add:

While the defendant can argue that the plaintiff does not have a valid prima facie admiralty claim against the defendant, the basis of ***the argument cannot be that the plaintiff has not provided sufficient evidence of such a claim***.

511 F. Supp. at 404 (citations omitted; emphasis supplied).

On these authorities, Defendant's argument that Afrodite was required to place into evidence the charter party or the Benxi Bill of Lading is thus meritless and contrary to law. Here, even a cursory review of Plaintiff's Second Amended Verified Complaint confirms that Afrodite has asserted a classic maritime claim against the Defendant:

- The Complaint alleges that Defendant, along with Ningbo, Shenyang and Rilico, were "the **shippers of cargoes loaded onboard the M/V ALTAIR** at Llanyungan and Xiangang, China." (Molina Aff. Ex. A, ¶11; emphasis supplied).

- The Complaint alleges that the M/V ALTAR had been **chartered by defendant Shine Star pursuant to the terms of a charter party dated March 23, 2007,**

4

pursuant to which **Shine Star had agreed to pay hire** to Plaintiff. (Molina Aff., Ex. A, ¶8).

- The Complaint alleges that pursuant to the **terms of** "Congenbill 1994 form Bills of Lading Nos. LJ01-05, LJ08, LJ10, LJ13, LJ15-31 (issuead at Llanyungang) and Bills of Lading Nos. XJ011A-C, XJ02, XJ07-8, XJ10-17, XJ18A-C, XJ19A-B, XJ20-28 (issued at Xiangang), **Defendants NINGBO, SHENYANG, BENXI and RILICO became liable, jointly and severally, to AFRODITE, under English law, to pay any unpaid hire due and owing from Defendant Shine Star.**" (Molina Aff., Ex. A, ¶13).

- The Complaint alleges that **Shine Star, breached the March 23, 2007 charter party, by failing to** "[pay] **charter hire to AFRODITE in the sum of $585,953.91** for the use and operation of the vessel." (Molina Aff., Ex. A, ¶14).

- The Complaint alleges that Plaintiff demanded payment from SHINE STAR of the sum of $585,953.91, but despite having made due demand, **Defendant SHINE STAR**, in breach of the [March 23, 2007 charter party] with AFRODITE **refused or otherwise failed to pay.**" (Molina Aff., Ex. A, ¶15).

- Finally, the Complaint alleges that "Plaintiff AFRODITE has demanded payment from **NINGBO, SHENYANG BENXI and RILICO of the sum $585,953.91**, but despite having made due demand, Defendants, **in breach of their terms of the subject Bills of Lading, have refused or otherwise failed to pay.**" (Molina Aff., Ex. A, ¶16).

Afrodite has thus properly asserted allegations that set forth a valid admiralty claim. The Second Amended Complaint unambiguously identifies the factual and legal basis underlying Afrodite's claim against Benxi. This is all Afrodite is required to do to defeat Benxi's challenge. *Ronda*, 511 F. Supp. at 403-05; *Transportes Navieros*, 2007 U.S. Dist LEXIS 50260, *12.

In addition, as Mr. Hewett points out, Benxi has failed to mention to the Court that on July 23, 2007 (or approximately 3 weeks before the Afrodite's Second Amended Complaint was filed), Afrodite demanded arbitration against Ningbo, Shenyang, Benxi and Rilico on the basis of the endorsements at issue. To date, only Benxi continues to avoid London arbitration with

5

Afrodite, while Ningbo and Shenyang, whose funds have been seized, are presently arbitrating in London, where the parties' rights and obligations will be adjudicated by an arbitration Tribunal. (Hewett Decl., ¶¶11-16; Ex. RAH5).

Accordingly, in light of the foregoing, that portion of Benxi's motion that seeks to vacate the order of attachment should be denied in all respects.

**POINT II**

**UNDER ENGLISH LAW, AFRODITE IS ENTITLED TO
RECOVER THE FULL AMOUNT OF OUTSTANDING
HIRE FROM BENXI**

The legal precedents in this District establish that the question of whether a party has asserted a valid admiralty claim within the ambit of Rule B must be decided under the law of the maritime contract relied upon by the party, which in this case is English law. *Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007); *T&O Shipping Ltd. v. Lydia Mar Shipping Co., S.A.*, 415 F. Supp. 2d 310 (S.D.N.Y. 2006).  Judge Haight has clearly stated this rule as follows:

> The existence *vel non* of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law, *in this case the law of the contract*.  (Emphasis Added).

*Sonito*, 478 F. Supp. 2d at 543.

In arguing that as a shipper it owes "freight" but not "hire," Benxi completely misses the dispositive issue before the Court.  The issue is not whether a shipper typically pays freight, but whether Afrodite in this case may recover **hire** from Benxi, as shipper, pursuant to the **unambiguous terms of the applicable bill of lading** which expressly obligate Benxi to pay

6

**hire**. This is a simple issue of contract interpretation subject to English law. *Ronda*, 511 F. Supp. 2d at 406; *Sonito*, 478 F. Supp. 2d at 543.

Bill of Lading XJ12, which is the applicable contract of carriage being asserted by Afrodite, provides in clear terms:

> **HIRE** PAYABLE AS PER C/P DD 23.03.07 BETWEEN OWNERS AFRODITE SEATRADE S.A. AND CHARTERERS SHINE STAR SEA TRANSPORT PTE. LIMITED.

(Hewett Decl., ¶6; Ex. RAH2; Emphasis supplied).

As Mr. Hewett declares, Afrodite has also brought claims in London arbitration against co-Defendants-Shippers Ningbo, Shenyang and Rilico that are based on identical endorsements found in the Bills of Lading that were issued to them by Afrodite. (Hewett Decl., ¶¶11, 13, Ex. RAH6).[1] The endorsements in the Ningbo and the Shenyang Bills of Lading read:

> HIRE PAYABLE AS PER C/P DD 23.03.07 BETWEEN OWNERS AFRODITE SEATRADE S.A. AND CHARTERERS SHINE STAR SEA-TRANSPORT PTE LIMITED AS CHARTS.

(Hewett Decl., Ex. RAH6, ¶2). Clearly, the text of the Ningbo and Shenyang endorsements is identical to the one contained in the Benxi Bill of Lading. (Hewett Decl., Ex. RAH6, ¶2). Critical to the disposition of Benxi's motion is the fact that Ningbo and Shenyang presented to the London arbitrators the very same arguments that Benxi raises on this motion. Ningbo and Shenyang argued to the London arbitrators that, *inter alia*, they were not liable for any outstanding hire due from the charterer Shine Star because "the charter provided for the charterers to pay hire whereas shippers are only normally liable for freight" and that it would be

---

[1] Rilico, which had been avoiding arbitration until funds were attached, has appointed English solicitors to represent its interests in arbitration. (Hewett Decl., ¶15).

7

"commercially repugnant" for them "to pay both hire and freight." (Hewett Decl., Ex. RAH6, ¶¶8-17).

The arbitrators appointed by Afrodite, Ningbo and Shenyang in their consolidated London proceedings, however, unanimously rejected Ningbo's and Shenyang's challenges and ruled that, in principle, on the basis of the endorsements contained in the applicable bills, Afrodite may seek to recover from Ningbo and Shenyang any unpaid hire due from the Defendant-Charterer Shine Star. (Hewett Decl., ¶13, 17-18; Ex. RAH6). In rejecting Ningbo's and Shenyang's challenge, the Arbitration Tribunal posed the determinative issue as follows:

> Whether as a matter of the true construction of the Bills of Lading signed by the Master {+i.e. what we have termed "the Owners' bills"}, the Shippers ***can in principle be liable for any hire due under the time charter*** dated 23 March 2007 between the Owners and Shine Star Sea Transport Pte. Ltd.

(Hewett Decl., Ex. RAH6, ¶6; emphasis supplied). In ruling in Afrodite's favor that, in principle, "the endorsements on owners' bills in this case ***could of themselves constitute agreements that the shipper would be liable for hire***," the arbitrators reasoned as follows:

> Whilst it may be unusual, even highly unusual, we do not see anything "commercially repugnant" in the concept of a bill of lading containing a provision for the payment of hire as distinct from freight. One might for example postulate a case in which a time chartered ship loads a bulk cargo of grain which is to be covered by a single bill of lading, where the time charterer fails to pay hire and the owners issue – and the shippers knowingly accept – a bill of lading which provided for them to pay the hire that the charterers would otherwise have had to pay under the time charter. There is ***absolutely nothing repugnant*** about that . . . ***For whatever shippers may ordinarily be liable, i.e. freight, if they agree to pay hire we see no reason in principle why they should not be bound to do so***.

(Hewett Decl., Ex. RAH6, ¶¶13, 17-18). Benxi cannot now be heard to complain that it may not be liable to pay hire, as per the express terms of the contract of carriage between Afrodite and Benxi, for that argument has been rejected by London arbitrators. This Court should not

8

condone Benxi's intentional avoidance of London arbitration and procedural gamesmanship; Benxi must now "face the music" and arbitrate in London, where the merits of the parties' dispute are and will be adjudicated.

In addition, Benxi has not provided competent evidence of English law. A New York attorney's mistaken view of English law cannot defeat the ruling of an English Arbitration Tribunal or the opinion of Afrodite's English law expert. *See Naias Marine S.A. v. Trans Pacific Carriers Co., Ltd.*, No. 95-10640, 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 10, 2008). Moreover, as Mr. Hewett demonstrates, New York counsel's reliance upon an English maritime law text and a decision of the Commercial Court in London is misguided. Again, the question here is not whether charterers usually pay "hire" and shippers usually pay "freight," but rather, whether Benxi, as a shipper, agreed and is liable to pay hire to Afrodite on the basis of the express terms of the contract of carriage that exists between the parties.

Finally, it should be noted that Benxi is manipulating the evidence it submits to the Court. As Mr. Hewett points out, Exhibit A to the Wang Lianxue Declaration, which is the bill of lading that Benxi purportedly advances as the contract of carriage between the parties, is false. (Hewett Decl., ¶8). Afrodite issued the authentic Bill of Lading XJ12 to Benxi, and to avoid any problems in the future regarding authenticity, Afrodite requested that Benxi or its representatives, in exchange of Bill of Lading J12, sign a receipt. Afrodite obtained a signed receipt from Benxi. (Hewett Decl., ¶7; Ex. RAH3, copy of the signed receipt). In fact, Afrodite also followed this procedure with Ningbo, Shenyang and Rilico and duly obtained executed receipts from these shippers acknowledging receipt of authentic Bills of Lading. (Hewett Decl., ¶7).

9

In addition, the document Benxi submits to the Court is signed and dated on April 25, 2007, yet the document also states that the cargoes were loaded onboard the vessel on May 5, 2007. Thus, it is simply impossible that Benxi's "bill of lading" can confirm on **April 25, 2007** that cargo was **actually** loaded onboard the M/V ALTAIR on **May 5, 2007**. Lastly, Mr. Hewett remarks that the document Benxi now presents to the Court is not in fact the same document Benxi sent to Mr. Hewett on September 17, 2007. Even a cursory comparison between the fax actually received by Mr. Hewett (copy attached to the Hewett Declaration as RAH4) and Mr. Wang's Exhibit A shows the discrepancy. Such a blatant manipulation of evidence by Benxi should not be condoned. In any event, the issue concerning the parties' contract will be resolved by English arbitrators, not this Court. (Hewett Decl., ¶8). Indeed, Afrodite, Ningbo and Shenyang are now fully addressing the merits of their commercial dispute to the London Arbitration Tribunal. (Hewett Decl., ¶14; Ex. RAH7).

In light of the foregoing, as it is clear that Afrodite, under English contract law, is entitled to seek unpaid hire from the shippers of the cargoes, Benxi's motion should be denied *in toto*.

### POINT III

### REDUCTION: DEFENDANT HAS NOT SHOWN GOOD CAUSE WHY THE ORDER OF ATTACHMENT SHOULD BE REDUCED AND THE AWARD RENDERED BY ARBITRATORS IN LONDON DEMONSTRATES THAT AFRODITE'S CLAIM FOR DAMAGES IS NON-FRIVOLOUS

Equally without merit is that portion of Defendant's motion that seeks to reduce the amount of security obtainable in this Rule B action. Rule E(6) governs and provides the applicable standard: "whenever security is taken the court may, on motion and hearing, for ***good cause shown***, reduce the amount of security given." Supplemental Admiralty Rule E(6)

10

(emphasis supplied). It is settled that plaintiff "need not prove its damages with exactitude" but only that its damages "are not frivolous." *The Rice Co. v. Express Sea Transport Corp.*, No. 07-7077, 2007 U.S. Dist. LEXIS 84300, *8 (S.D.N.Y. Nov. 15, 2007); *Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F. Supp. 235, 237 (S.D.N.Y. 1996). Once Plaintiff establishes through its pleadings that the damages for which it seeks security are not frivolous, Defendant's motion fails. *Ronda*, 511 F. Supp. 2d at 406 (court denying in part and granting in part motion to redue solely on the basis of factual assertions in complaint); *The Rice Co.*, 2007 U.S. Dist. LEXIS 84300, *8 (denying motion to reduce when factual evidence of damages is disputed).

Here, Afrodite claims that, pursuant to the express and unambiguous language contained in Bill of Lading XJ12, it is entitled to recover from Benxi all outstanding hire that defendant Shine Star failed to pay to Afrodite pursuant to the March 23, 2007 charter party, or $585,453.31 (plus interest and costs of arbitration). London arbitrators have preliminary decided in principle that, under English contract law, Afrodite can seek to recover from Ningbo and Shenyang, who stand in the same shoes as Benxi, **all unpaid hire**. Thus, Afrodite's quantum of damages is non-frivolous.

In *Ronda*, a case not cited by the Defendant, Judge McMahon rejected defendant's "reduction" argument that, based on the terms of the parties' maritime contracts, plaintiff was not entitled to consequential and indirect consequential damages. In so doing, the Court held:

> This argument raises a question of contract interpretation. It is not for this Court to decide whether incidental or consequential damages are recoverable under the charter parties at issue, but rather for the English court to resolve in due course.

511 F. Supp. 2d at 406. Here Afrodite's position is all the more compelling, as arbitrators have unanimously and preliminarily decided the issue of contract interpretation in Afrodite's favor.

11

Indeed, the non-frivolous nature of Afrodite's claim for damages is demonstrated by the clear language of the Award:

> Of course, in a case such as the present, questions may arise as to precisely what amount of hire is to be paid by any particular shipper, and such questions may not be altogether easy to answer. But possible difficulty in knowing how, in detail, to give effect to them does not seem to us to be a sufficient reason for striking down what appears to be *a straightforward reading of words of contract* . . . so far as we know it has never been suggested that this is a reason for not giving the relevant contractual provisions their natural meaning.

(Hewett Decl., Ex. RAH6, ¶¶13, 17-18). As Mr. Hewett attests, as a matter of English contract law, to the extent that the language of the endorsement is clear and unequivocal Afrodite is entitled to recover "**the whole of the outstanding hire** due on termination of the charterparty, USD 585,453.31, supplemented by increments for interests and costs." (Hewett Decl., ¶23).

As with its treatment of English law concerning "hire" and "freight," Defendant also completely misses the point concerning Afrodite's entitlement to seek the entirety of the unpaid hire from Benxi. The fact that Benxi, as F.O.B. seller, is not required to pay any of the shipping costs associated with the cargo is immaterial to Afrodite's claim for damages. Whatever contractual arrangements Benxi had to sell the cargo, whether with its buyer or freight forwarder, these terms bear no relevance whatsoever to the contract of carriage that exists between Afrodite and Benxi. The narrow issue before the Court is whether, under English law, Afrodite is entitled to recover full hire from Benxi pursuant to the terms of Bill of Lading XJ12, which is the governing contract of carriage between these parties. An English Arbitration Tribunal has preliminarily and unanimously settled that question in Afrodite's favor. (Hewett Decl., Ex. RAH6). The Defendant's argument to reduce should thus be rejected.

12

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion, direct that the challenged attachment remain in place, and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       March 24, 2008

         FREEHILL, HOGAN & MAHAR LLP
         Attorneys for Plaintiff
         AFRODITE SEA TRADE S.A.

By: _____
         Don P. Murnane, Jr. (DM 3639)
         Manuel A. Molina (MM 1017)
         80 Pine Street
         New York, New York  10005
         (212) 425-1900

TO:   NICOLETTI HORNING & SWEENEY
       Wall Street Plaza
       88 Pine Street, Seventh Floor
       New York, New York 10005

       Attn:   James F. Sweeny, Esq.
              Michael J. Carcich, Esq.
              Kevin J.B. O'Malley, Esq.

13

NYDOCS1/301164.1