UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
AFRODITE SEA TRADE S.A..,

                Plaintiff

   – v. –                                      07 CV 5626 (DAB)(MHD)

SHINE STAR SEA-TRANSPORT           ELECTRONICALLY FILED
PTE, LTD., *et al.*

                Defendants.

-------------------------------------------------------x


### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### BENXI NORTHERN STEEL PIPES CO. LTD.'S MOTION TO DISMISS AND
### TO VACATE PROCESSES OF MARITIME ATTACHMENT AND GARNISHMENT


                                                                                        NICOLETTI HORNIG & SWEENEY
                                                                                       Wall Street Plaza
                                                                                       88 Pine Street, Seventh Floor
                                                                                       New York, New York 10005-1081
                                                                                       (212) 220-3830

                                                                                       *Attorneys for Defendant*
                                                                                         *Benxi Northern Steel Pipes Co. Ltd.*

Of Counsel

    James F. Sweeney
    Michael J. Carcich
    Kevin J.B. O'Malley

**PRELIMINARY STATEMENT**

Defendant Benxi Northern Steel Pipes Co. Ltd. ("Benxi") submits this Reply Memorandum of Law in further support of its motion to dismiss the claim asserted against it in the Second Amended Verified Complaint (the "Complaint") and to vacate the Processes of Maritime Attachment and Garnishment issued against it.

**ARGUMENT**

**POINT I**

**BENXI'S PROPERTY IS IMMUNE FROM ATTACHMENT**

Plaintiff Afrodite Sea Trade S.A. ("Afrodite") is not entitled to relief against Benxi under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions because Benxi's property is immune from attachment.

Under the Foreign Sovereign Immunities Act ("FSIA"), a foreign state's property in the United States is immune from attachment except as provided in specific provisions of the Act. *See* 28 U.S.C. § 1609. In particular, foreign states are immune from prejudgment attachment of their assets used for commercial activity in the United States, unless "the foreign state has explicitly waived its immunity from attachment prior to judgment . . . ." 28 U.S.C. § 1610(d)(1); *see also S & S Machinery Co. v. Masinexportimport,* 706 F.2d 411, 413 (2d Cir. 1983).

As defined by the FSIA, a "foreign state" includes "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state," in turn, means any entity:

(1)   which is a separate legal person, corporate or otherwise, and

(2)   which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

>    (3)   which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

Benxi is an agency or instrumentality of the People's Republic of China. It is a wholly owned joint venture of Beitai Iron & Steel Group Co., Ltd. ("Beitai") and North Steel HK Ltd. ("North Steel"). *See* Reply Declaration of Wang Lianxue in Support of Motion to Dismiss ("Wang Decl.") ¶ 8. North Steel is wholly owned by Beitai. *See id*. Beitai, in turn, is 100% owned by the People's Republic of China. *See id*. As it was unaware of the significance of this in connection with attachments under United States law, Benxi did not advise counsel of these facts until recently. *See id*.

As an agency or instrumentality of the People's Republic of China, Benxi's property is immune from prejudgment attachment. *See*, *e.g.*, *S & S Machinery,* 706 F.2d at 413. Therefore, the attachment must be vacated.[1]

## POINT II

## THE MARITIME ATTACHMENT SHOULD BE VACATED BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BENXI

On a motion to vacate a maritime attachment, the plaintiff who obtained the attachment has the burden to show that the attachment was properly ordered and complied with the requirements of Rules B and E of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434,

---

[1] Once a defendant presents a *prima facie* case that it is a foreign sovereign, the plaintiff has the burden of coming forward with evidence showing that immunity should not be granted. *See*, *e.g.*, *Baglab Ltd. v. Johnson Matthey Bankers Ltd.*, 665 F. Supp. 289, 293-94 (S.D.N.Y. 1987).

2

445 n. 5 (2d Cir. 2006). As Afrodite suggests, what a plaintiff must show to meet its burden is an unsettled issue since the Second Circuit's holding in *Aqua Stoli*.

Although several judges in this District have adopted the *prima facie* standard espoused by Afrodite, that is not the only standard that has been applied in the wake of the *Aqua Stoli* decision. In *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275 (S.D.N.Y. 2006), Judge Lynch explained that the standard generally applied in a Rule E(4)(f) analysis:

> . . . is that the plaintiff must demonstrate that "reasonable grounds" exist for the attachment. The "reasonable grounds" standard involves review not only of the adequacy of the allegations in the complaint, but also of any evidence submitted by the parties. "When determining whether . . . reasonable grounds exist, 'Supplemental Rule E does not restrict review to the adequacy of the allegations in the complaint.' A court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing."
>
> Although review of extraneous evidence is appropriate, plaintiffs in a Rule E(4)(f) proceeding should not be required to prove their case. Discovery has not yet been had, and it would defeat the purpose of attachment-preserving defendants' assets in case plaintiff is able to prevail at trial or on summary judgment-to require at this stage that plaintiffs asserting a "valid prima facie maritime claim" prove that the facts in the complaint are true. "A rule E(4)(f) hearing is not intended to definitely resolve the dispute between the parties, but only to make a preliminary determination of whether there are reasonable grounds for issuance of the arrest warrant."
>
> Accordingly, courts have compared the showing required in a "reasonable grounds" analysis to the more familiar standard of probable cause. The Supreme Court, interpreting the phrase "reasonable grounds" as used in a criminal statute, has said that "[t]he terms "probable cause" as used in the Fourth Amendment and 'reasonable grounds' . . . are substantial equivalents of the same meaning." Probable cause is less than a preponderance of the evidence; in the criminal context, it has been described as a "fair probability" that the asserted fact is true. With this standard in mind, courts in Rule E(4)(f) hearings have emphasized that their conclusions are "merely holding that it is likely" that alleged facts are true.

3

475 F. Supp. 2d at 278-80 (citations omitted); *see also Ullises Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318 (S.D.N.Y. 2006), *overruled on other grounds*, *Aqua Stoli,* 460 F.3d 434.

Benxi submits that the "reasonable grounds" standard is the correct burden of proof required under Rule E. Applying the *prima facie* standard would lead to the unconstitutional taking of property and the denial of a fair hearing because a defendant's evidence would not be considered by the Court. By examining only the "upon information and belief" averments of a complaint, the Court would render contravening evidentiary proffers wholly meaningless. A Rule E(4)(f) hearing would be tantamount to no hearing at all, and therefore a deprivation of due process, if the evidence presented in support of a motion to vacate an attachment were not considered in determining whether to uphold the attachment.

**A.     The Complaint Does Not Meet The
        Pleading Requirements Of Rule E(2)(a)**

Referring to the allegations in the Complaint, Afrodite contends that "it has asserted a classic maritime claim" against Benxi. Memorandum of Law of Plaintiff Afrodite Sea Trade S.A. in Opposition to the Motion to Vacate or to Reduce Order of Attachment of Defendant Benxi Northern Steel Pipes Co. Ltd. ("Opp.") at p. 4. One need look no further than the interim arbitration award relied upon so heavily by Afrodite to see that the claim asserted against Benxi is anything but "classic." Therein, the arbitrators stated that Afrodite's claim can be described as "unusual, even highly unusual." Exhibit "RAH 6" to Declaration of Roy Albert Hewett Pursuant to 28 USC § 1746 ("Hewett Decl.") at p. 5 ¶ 13.

Given the unusual claim being pursued by Afrodite, it is particularly important that the Complaint be strictly held to the heightened pleading standard of Rule E(2)(a). It is not enough for Afrodite to merely put Benxi on notice of the claim against it. *See BARGE KATY-B*, 427

4

F.3d 93, 105 (1st Cir. 2005).  Rather, Rule (E)(2)(a) requires that a complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."  Fed. R. Civ. P. Supp. Rule E(2)(a).  The Complaint does not state the circumstances from which Afrodite's claim against Benxi arises whatsoever, let alone with the required particularity.  Indeed, the declaration submitted by Mr. Hewett to explain the basis for Afrodite's claim is almost as long as the Complaint itself.

Afrodite merely alleges that the terms of the subject bill of lading, XJ12, make Benxi "liable, jointly and severally, to AFRODITE, under English law, to pay any unpaid hire due and owing from Defendant Shine Star."  Opp. at p. 5.  The terms of Bill of Lading XJ12 do not appear in the Complaint.  Yet, the operative terms of that bill of lading are quoted no less than three times in Afrodite's opposition memorandum.  In fact, Afrodite emphasizes the allegedly "unambiguous terms of the applicable bill of lading."  Opp. at p. 6 (emphasis omitted).  If the unusual terms of Bill of Lading XJ12 are so important to Afrodite's claim, which they clearly are, then those terms should have been plead in the Complaint.  The failure to do so renders the Complaint insufficient under Rule E(2)(a).

### B. Afrodite Does Not Have Reasonable Grounds For The Claim Against Benxi

The basis for Afrodite's claim against Benxi is essentially that Bill of Lading XJ12 allegedly provided that:

> HIRE PAYABLE AS PER C/P DD 23.03.07 BETWEEN OWNERS AFRODITE SEATRADE S.A. AND CHARTERERS SHINE STAR SEA TRANSPORT PTE. LIMITED

Exhibit "RAH 2" to Hewett Decl.[2]  Afrodite further relies upon the allegation that Bill of Lading XJ12 incorporated the terms of the subject time charter party.  *See*, *e.g.*, Hewett Decl. at p. 2 ¶ 6.

Benxi denies that Bill of Lading XJ12 "forms the contract of carriage between" it and Afrodite (Opp. at p. 1) and further denies that there was any contractual relationship between it and Afrodite whatsoever.  Even assuming, *arguendo*, that Bill of Lading XJ12 were the contract between Benxi and Afrodite, the terms of that bill of lading do not provide a basis for the claim against Benxi.

Afrodite asserts that Benxi is liable for hire under the charter party because Bill of Lading XJ12 allegedly states that "HIRE PAYABLE AS PER" the charter party.  The charter provides, however, that hire is payable by some party other than Benxi.  Clause 4 of the charter party provides that "the Charterers shall pay for the use and hire of said Vessel . . . ."  Exhibit "RAH 1" to Hewett Decl. at p. 2 cl. 4.  Afrodite does not allege that Benxi was the charterer of the vessel.  Therefore, Benxi has no obligation to pay hire under the terms of the charter party, which are allegedly incorporated into Bill of Lading XJ12 and upon which Afrodite relies.

Furthermore, the terms of the charter party contradict the terms of Bill of Lading XJ12.  Clause 46 of the charter party provides:

> **Bills of Lading**
> Master to sign Congenbill Edition 1994 Bills of Lading, in strict conformity with the Mate receipts, marked "freight payable as per Charter-Party dated 23.03.2007 and or freight prepaid and/or freight collect) Incorporating the Charter-Party between Owners and Time-Charterers.
>
> No Liner or Through Bills of Lading to be issued.

---

[2] Afrodite claims that it "obtained a signed receipt from Benxi" for Bill of Lading XJ12.  Opp. at p. 9.  The company that allegedly signed for Bill of Lading XJ12 was not, however, a representative of Benxi.  *See* Wang Decl. ¶ 7.

Exhibit "RAH 1" to Hewett Decl. at p. 9 cl. 46.  Thus, the bills of lading were to be marked "*freight* payable as per Charter-Party dated 23.03.2007" rather than "*hire* payable as per Charter-Party dated 23.03.2007."  That would comport with the usual practice in maritime commerce (*i.e.*, the remuneration paid under a bill of lading is called "freight").[3]

Under the terms of the charter party, as allegedly incorporated into Bill of Lading XJ12, Afrodite does not have reasonable grounds for its claim against Benxi.[4]

## POINT III

### THE SECURITY SHOULD BE REDUCED

Afrodite asserts that "it is entitled to recover from Benxi all outstanding hire that defendant Shine Star failed to pay . . . ."  Opp. at p. 11.  In the first instance, it is Benxi's position that Afrodite is not entitled to security in excess of the value of the freight for the cargo shipped under Bill of Lading XJ12.  *See* Memorandum of Law in Support of Defendant Benxi Northern Steel Pipes Co. Ltd.'s Motion to Dismiss and to Vacate Processes of Maritime Attachment and Garnishment at pp. 6-8.  However, even if Afrodite were permitted to seek security based on the

---

[3] Afrodite complains that Benxi has failed to submit the declaration of an expert on English law to support its position. *See* Opp. at pp. 2 & 9.  Such a declaration is not necessary.  Rule 44.1 of the Federal Rules of Civil Procedure provides that the Court may determine foreign law by considering "any relevant material or source . . . ."  Therefore, the Court may rely upon the legal authorities submitted by Benxi in its initial moving papers.

[4] Afrodite's reliance upon the interim arbitration award issued against two of the other defendants in this action is misplaced.  Afrodite acknowledges that Benxi is not a party to that arbitration.  Furthermore, there is no evidence that those defendants are as "similarly situated" as Afrodite claims.  Opp. at p. 1.  It is unknown, for instance, whether those other defendants were F.O.B. sellers, as Benxi was.  *See* Wang Decl. ¶ 3.  As an F.O.B. seller, it is Benxi's position that it is not responsible for any of the costs associated with the shipment of steel pipes it sold.  *See, e.g., Berisford Metals Corp. v. S/S Salvador*, 779 F.2d 841, 843 n. 2 (2d Cir. 1985) (title to goods passes when the goods are tendered at the F.O.B. point); Ademuni-Odeke, *Insurance of F.O.B. Contracts in Anglo-American and Common Law Jurisdictions Revisited: The Wider Picture*, 31 Tul. Mar. L.J. 425, 431 (Summer 2007).

amount of allegedly outstanding charter hire, there is no legal authority that entitles Afrodite to security from Benxi for all of the outstanding hire.

Under Clause 4 of the subject time charter party, hire was to be paid at the rate of $27,000 per day. *See* Exhibit "RAH 1" to Hewett Decl. at p. 2 cl. 4. Afrodite alleges that the cargo shipped under Bill of Lading XJ12 was not loaded until the second or third load port. *See* Hewett Decl. at pp. 3-4 ¶ 9. Accordingly, the charter had commenced at some time prior to the loading of the cargo shipped under Bill of Lading XJ12. Even if Afrodite were to prevail on its theory of liability, it would be inequitable for it to recover from Benxi for hire for the period of time prior to the loading of the cargo shipped under Bill of Lading XJ12.

Afrodite has provided no legal authority to support the proposition that a shipper, who may be liable in principle for charter hire, can be held liable for all of the outstanding hire due under a charter party. While Afrodite does refer to the interim arbitration award as support for its contention that it can seek to recover "all unpaid hire" from each of the shippers (Opp. at p. 11 (emphasis omitted)), the award itself says nothing of a kind. Indeed, in deciding that a shipper can, in principle, be held liable for charter hire under certain circumstances, the arbitrators specifically stated that ". . . questions may arise as to precisely what amount of hire is to be paid by any particular shipper, and such questions may not be altogether easy to answer." Exhibit "RAH 6" to Hewett Decl. at p. 6 ¶ 14. As Mr. Hewett acknowledges (*see* Hewett Decl. at p. 6 ¶ 18), the arbitrators have not answered those questions.

In the absence of any legal support for its novel theory of liability, Afrodite should not be allowed to seek security from Benxi for the period of time prior to the loading of the cargo shipped under Bill of Lading XJ12. Neither the Complaint nor the papers submitted in opposition to Benxi's motion indicate how many days elapsed between the commencement of the

charter and the loading of the cargo under Bill of Lading XJ12. Without such information, the proper amount of security cannot be calculated. In such circumstances, if the Court does not adopt Benxi's primary position regarding the reduction of security, it would be appropriate to reduce the security by one-third to take into account the alleged fact that the cargo shipped under Bill of Lading XJ12 was not loaded until the second or third load port.

## CONCLUSION

For the foregoing reasons, the claim asserted in the Second Amended Verified Complaint against Defendant Benxi Northern Steel Pipes Co. Ltd. should be dismissed and the Processes of Maritime Attachment and Garnishment issued against that defendant should be vacated. In the alternative, the amount of security that can be sought from Benxi should be reduced.

Dated: April 3, 2008
      New York, New York

                                Respectfully submitted,

                                NICOLETTI HORNIG & SWEENEY

                                *Attorneys for Defendant*
                                  *Benxi Northern Steel Pipes Co. Ltd.*

                By:    /s Kevin J.B. O'Malley
                          Kevin J.B. O'Malley
                          Wall Street Plaza
                          88 Pine Street, Seventh Floor
                          New York, New York 10005-1801
                          (212) 220-3830