296-07/DPM/MAM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AFRODITE SEA TRADE S.A.,

                        Plaintiff,

      -against -

SHINE STAR SEA-TRANSPORT PTE. LTD.,        **07 CIV 5626 (DAB)**
NINGBO MINMETALS & MACHINERY IMP. &
EXP. CORP., SHENYANG SANYO BUILDING
MACHINERY CO. LTD., BENXI
NORTHERN STEEL PIPES CO. LTD., and
RILICO SINGAPORE PTE. LTD.,

                        Defendants.
------------------------------------------------------------x

**SUR-REPLY MEMORANDUM OF LAW OF PLAINTIFF AFRODITE SEA TRADE S.A. IN OPPOSITION TO THE MOTION TO VACATE OR TO REDUCE ATTACHMENT OF DEFENDANT BENXI NORTHERN STEEL PIPES CO. LTD.**

Of Counsel
Don P. Murnane, Jr.
Manuel A. Molina

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900

Plaintiff AFRODITE SEA TRADE S.A. ("Plaintiff" or "Afrodite"), by and through its counsel, Freehill Hogan & Mahar, LLP, hereby submits this memorandum of law in further opposition to the motion of Defendant BENXI NORTHERN STEEL PIPES CO. LTD. ("Defendant" or "Benxi") to vacate or to reduce the attachment.[1]

## PRELIMINARY STATEMENT

In its tardy Reply, Benxi invents a new eleventh-hour argument that, as an instrumentality of the People's Republic of China ("PRC"), it enjoys immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§1601 *et seq.*, (the "FSIA" or "Act"). Inexplicably, Benxi was unaware of this purported status at the time of its motion.

Benxi's conclusory allegation is insufficient to satisfy its burden of proof; moreover, Benxi is apparently entirely unaware of the controlling Supreme Court precedent in *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) which prevents Benxi from claiming immunity status. In *Dole*, the Supreme Court held a company does not qualify for "instrumentality" status under the FSIA unless the majority of its shares are **directly** owned by the foreign state. The *Dole* Court expressly rejected the very argument advanced by Benxi that the "tiering" of intermediate layers of corporate ownership establishes foreign state ownership.

Benxi alleges: (a) it is a "wholly owned joint venture of Beitai Iron & Steel Group Co. Ltd. ("Beitai") and North Steel HK Ltd. ("North Steel");" (b) Beitai wholly owns North Steel; and (c) Beitai "is 100% owned by the government" of the PRC. Benxi's admission that it is a wholly-owned subsidiary of yet two other Chinese corporate entities defeats any claim to FSIA

---

[1] On April 7, 2008, the Bank of China advised Afrodite's counsel for the first time that it had restrained the following funds belonging to Benxi: (a) $10,564.52 attached on December 3, 2007; (b) $8,916.70 atttached on December 3, 2007; and (c) $5,200 attached on February 28, 2008.

immunity under *Dole*. In short, since there is no direct state ownership by the PRC in Benxi, Benxi has no claim to immunity. Accordingly, this Court should deny Benxi's motion in all respects.

## ARGUMENT

### POINT I

### BENXI'S REPLY SUBMISSION IS UNTIMELY

Rule 6.1(b) of the Local Rules of the U.S. District Courts for the Southern and Eastern District requires that the non-moving party, following the service and filing of a motion on notice such as Benxi's motion herein, serve opposition papers within "ten business days after service of the moving papers." Local Rule 6.1(b) also prescribes that any reply submissions "shall be served within five business days after service of the answering papers." In this case, Benxi filed its motion on March 10, 2008 and Afrodite's counsel was served with the moving papers on the same day via this Court's Electronic Case Filing ("ECF") system. Accordingly, Afrodite was required to, and did file, its opposition on March 24, 2008. Because Benxi's counsel is a registered, participating attorney with the Court's ECF system, Benxi was served on that day. Benxi's reply was therefore due five business days thereafter, or March 31, 2008. Benxi, however, filed its reply papers on April 3, 2008. Benxi's reply is therefore untimely.

### POINT II

### THIS SUR-REPLY IS APPROPRIATE BECAUSE
### THE REPLY MEMORANDUM RAISES NEW ISSUES

The law of this circuit generally permits a sur-reply in response to new arguments, evidence or case law introduced in the moving party's reply papers. "Where new evidence is

2

presented in a party's reply brief or affidavit ... the district court should permit the nonmoving party to respond to the new matters prior to the disposition of the motion." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 945 F. Supp. 693, 708 (S.D.N.Y. 1996) (quoting *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991) *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992)). A sur-reply should therefore be permitted when the moving party attempts to "spring upon [the opposing party] new reasons for" granting the relief requested in the motion. *Id.*

In its reply, Benxi concedes that it raises for the first time the argument that it is immune from a Rule B attachment under the FSIA. This ground alone justifies the filing of this sur-reply. Further, Benxi raises two new arguments: (1) that Clause 46 of the charter party somehow trumps the clear and unequivocal provisions of the bill of lading at issue; and (2) that Afrodite's claim is overstated because Afrodite seeks to recover hire for a period of time during which Benxi's cargo was not onboard the vessel. These additional new grounds provide further justification for filing this sur-reply and are, as discussed below, also without merit.

Moreover, courts invariably accept the submission of evidence even at the post-attachment hearing. *See e.g. Salazar v. The Atlantic Sun*, 881 F.2d 73 (3d Cir. 1989); *Rolls Royce Ind. Power (India) v. M.V. FRATZIS M.*, No. 95-2630, 1995 U.S. Dist. LEXIS 22219 (S.D.N.Y. Oct. 5, 1995); *Linea Naviera de Cabotaje v. Mar Caribe de Navegacion, C.A.*, 169 F. Supp. 2d 1341 ((M.D.Fla. 2001). As Judge Haight commented in the *M.V. FRATZIS M*:

> The Supplemental Admiralty Rules do not specify what form the post-arrest hearing must follow. Consequently, the type of proceeding is left to the discretion of the District Court. Whether a full adversary hearing with testimony and cross-examination of witnesses in open court is necessary depends on the nature of the issues in controversy. (1995 U.S. Dist. LEXIS 22219, *5).

Thus, the filing of the sur-reply at this time, prior to the post-attachment hearing, is amply supported by applicable law. For the reasons set forth herein and for those established in Plaintiff's responsive papers, Defendant's motion should be denied.

### POINT III

### BENXI, WHO BEARS THE ULTIMATE BURDEN OF PROOF, HAS NOT DEMONSTRATED THAT IT IS AN INSTRUMENTALITY OF THE PRC

Under the FSIA, a three-step proof burden places the ultimate onus of proof on the party seeking immunity. In a footnote, Benxi outlines only two of the three steps. Benxi suggests that once it, as the party seeking immunity, presents a *prima facie* showing of agency or instrumentality status, the burden then shifts to the opposition to demonstrate why the FSIA should not apply. This is incorrect.

In *Cargill Int'l S.A. v. M/T PAVEL DYBANKO*, 991 F.2d 1012, 1016 (2d Cir. 1993), the Second Circuit made clear that the "ultimate burden of persuasion" is on the party seeking FSIA immunity. Similar support for this burden of proof framework is found in numerous other decisions. *See, e.g., City of N.Y. v. Permanent Mission of India to the UN*, 446 F.3d 365, 369 (2d Cir. 2006); *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2002); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n.6 (5th Cir. 1989); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445 (6th Cir. 1988); *Arango v. Guzman Travel Advisors Corp.*, 621 F2d 1371 (5th Cir. 1980).

In *Murphy v. Korea Asset Mgmt. Corp.*, 421 F.Supp. 2d 627 (S.D.N.Y. 2005), *aff'd*, 190 Fed. Appx. 43 (2d Cir. 2006), District Judge Holwell thoroughly described the applicable

shifting burdens of proof in a case in which the defendant claimed it was an agent or instrumentality of a foreign state:

> [A] party claiming immunity need not initially establish by a preponderance of the evidence that it is an "agent or instrumentality of a foreign state" under Section 1603(b); rather, the entity need initially only make a prima facie showing. Once that showing is made, the opposing party then "has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." Determining whether the opposing party has met this burden "involves a 'review [of] the allegations in the complaint, the undisputed facts, if any, placed before [the court] by the parties, and -- if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue -- [resolution of] disputed issues of fact.'" Finally, if that burden is met, the "ultimate burden of persuasion" shifts back to the party claiming immunity. This final burden must be met by a preponderance of the evidence.

*Id.* at 640-41. Here, all that Benxi has submitted is the admission of its General Manager, Wang Xianlue, that it is a **subsidiary** of companies that are, in turn, "100% owned by the government of" the PRC. Indeed, the Second Circuit decision relied upon by Benxi illustrates the quality of evidence necessary to show agency or instrumentality status under the FSIA. *S&S Machinery Co. v. Masin Export Import*, 706 F.2d 411 (2d Cir. 1983). There, the Romanian bank claiming FSIA immunity presented as evidence of its instrumentality status: (a) Romanian law establishing that the Bank was a state-owned instrumentality; (b) the affidavit of the Consul to the Socialist Republic of Romania; and (c) "an expert on Romania law [who] corroborated the Bank's assertion that is owned by the state." *Masin*, 706 F.2d at 414-15.

Here Benxi has provided no such comparable evidence of Chinese law corroborating the self-serving statement of its General Manager. Benxi has provided no affidavits of Chinese government officials or of a Chinese law expert corroborating Benxi's allegation that is an instrumentality of the PRC. In the face of these glaring omissions of proof, Benxi has failed to

5

meet even a *prima facie* entitlement to FSIA immunity.

## POINT IV

### THE SUPREME COURT'S CONTROLLING *DOLE* DECISION PRECLUDES BENXI FROM CLAIMING FSIA IMMUNITY BECAUSE IT IS NOT DIRECTLY OWNED BY THE PRC

Because Benxi is not **directly** owned by the PRC, its *prima facie* entitlement to FSIA immunity is also precluded by the criteria established in 2003 by the Supreme Court in *Dole*. Benxi is apparently unaware of this controlling precedent and misguidedly relies upon the Second Circuit's *Masin* decision which predates *Dole* by some twenty years.[2]

Prior to the Supreme Court's decision in *Dole*, the circuit courts struggled with the issue of whether the FSIA requirement of majority ownership by a foreign state could be satisfied in a situation involving corporate intermediaries. *See, e.g., Bank of China v. NBM L.L.C.*, 01-0815 (DC), 2002 U.S. Dist. Lexis 9468 (S.D.N.Y. May 24, 2002) (noting the split in the circuits and holding tiering is not allowed under FSIA). That question was definitively answered in 2003 when the Supreme Court in *Dole* held that tiered state ownership does not suffice to trigger immunity status under the FSIA.

In *Dole*, the state ownership in the corporate entities claiming agent or instrumentality status was not direct. Instead, there were one or more layers of intermediate corporate entities between the State of Israel and the subsidiary entities who claimed immunity. The Supreme Court framed the issue as follows: "whether a corporate subsidiary can claim instrumentality status where the foreign state does not own a majority of the subsidiary's shares directly but does

---

[2] *Masin* is also factually distinguishable in that the entities seeking immunity there were **directly** owned by the Romanian state.

6

own a majority of the shares of a corporate parent one or more tiers above that subsidiary." 538 U.S. at 471.

The Supreme Court answered the question unequivocally: "**[O]nly direct** ownership of a majority of shares by the foreign state satisfies the statutory requirement" and provides a basis for immunity. *Id.* at 474 (emphasis supplied). Importantly, the Court noted that corporate structure is the critical analytical tool that ultimately controls the outcome as to whether state ownership is direct because it is "a basic tenet of American corporate law" that "a corporation and its shareholders are distinct entities" such that a "corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary." 538 U.S. at 474-75. Indeed, the Supreme Court rejected the hazy concept of ultimate or beneficial ownership that was urged by the entities seeking immunity in *Dole*. The Supreme Court stated:

> Section 1603(b)(2) speaks of ownership. The Dead Sea Companies [the parties seeking immunity in *Dole*] urge us to ignore corporate formalities and use the colloquial sense of that term. They ask whether, in common parlance, Israel would be said to own the Dead Sea Companies. We reject this analysis. In issues of corporate law structure often matters.

*Id.* at 474. Applying this rationale, the Court rejected agency or instrumentality status in *Dole* because there was no direct state ownership by Israel.

Thus *Dole* instructs that an examination of the actual corporate structure is mandatory. Here, accepting Benxi's admission as to *actual corporate ownership structure*, there is no direct state ownership by the PRC; Benxi is a wholly owned subsidiary of yet two other Chinese corporate entities. Accordingly, Benxi's claim for FSIA immunity fails.

7

## POINT V

## BENXI CONTINUES TO MISCONSTRUE ENGLISH LAW AND TO ADVANCE ARGUMENTS ALREADY REJECTED BY A PANEL OF ARBITRATORS IN LONDON

Benxi's reply continues to ignore the impact of the Interim Declaratory Award, dated November 19, 2007 ("the Award") issued by English arbitrators. The Award defeats the arguments advanced by Benxi here. Indeed, even if this Court were to apply the "reasonable grounds standard" urged by Benxi rather than the *prima facie* pleading standard accepted by the majority of courts in this district, the Award demonstrates that there are indeed "reasonable grounds" to maintain the order of attachment and/or attachments in place because the arbitrators have ruled that Afrodite may seek to recover the full outstanding hire from the shippers of cargo onboard the M/V ALTAIR.[3]

### A. Charter Party Clause 46

Benxi raises for the first time the argument that Clause 46 of the charter party somehow trumps the terms of the Bill of Lading at issue. But as Mr. Hewett's accompanying Sur-Reply declaration establishes, Benxi's argument is simply wrong as a matter of English law. (Sur-Reply Declaration of Roy Albert Hewett, dated April 8, 2008 ("Sur-Reply Decl."), ¶4; Exhibit RAH8). The correct position under English law is that an express bill of lading term prevails over a charter party clause. (Sur-Reply Decl., ¶4, Ex. RAH). Moreover, the Award clearly negates the

---

[3] Benxi completely misunderstands the impact of the Award when it argues in a footnote that it is not bound by the Award. The issue, for purposes of Benxi's motion to vacate, is not whether the Award binds Benxi, but rather, whether Afrodite, under English law, can recover outstanding hire from shippers of cargo such as Benxi on the basis of the express provision in a bill of lading that so stipulates. A panel of arbitrators answered that question affirmatively. Thus, the Award conclusively demonstrates that Afrodite has an admiralty claim against Benxi within the purview of Rule B.

8

interpretation of English law Benxi parrots through its New York counsel who are not qualified to counter Mr. Hewett's evidence. Apparently, Benxi is unable to locate an English solicitor willing to support its argument. But the fact remains that Mr. Hewett's declarations are unrebutted and are clearly supported by the applicable English law and the Award. Consequently, Benxi's "Clause 46" contention is devoid of any merit and should be rejected.

**B.     Pre-Loading Hire**

Equally meritless is Benxi's additional new argument that Afrodite's claim is overstated because Afrodite seeks to recover hire for a period of time before Benxi's cargo was loaded onboard. But as Mr. Hewett Sur-Reply declaration demonstrates, this too is patently false. (Sur-Reply Declaration, ¶5; Hewett Declaration, Ex. RAH 7). Afrodite is simply demanding the balance of charter hire that was not paid by the charterer after having credited prior hire payments. Thus, Afrodite is claiming the last 22 days out of the total 85.5 days of the charter period. (Sur-Reply Declaration, ¶5; Hewett Declaration, Ex. RAH 7).

In sum, Benxi's Reply advances desperate "kitchen sink" arguments which seek to deflect attention from the legal impact of the Award, namely, that Afrodite is entitled, under English law, to seek the full outstanding hire not paid by the charterer **from** the cargo shippers. Instead of asserting frivolous arguments before this Court, Benxi should be arbitrating the merits of Afrodite's claim in London as co-defendants Ningbo, Shenyang and Rilico have rightly determined is the proper forum for these issues.

9

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion, direct that the order of attachment and/or attachments remain in place, and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
April 9, 2008

>                    FREEHILL, HOGAN & MAHAR LLP
>                    Attorneys for Plaintiff
>                    AFRODITE SEA TRADE S.A.
>
> By:                _____
>                    Don P. Murnane, Jr. (DM 3639)
>                    Manuel A. Molina (MM 1017)

TO:   NICOLETTI HORNING & SWEENEY
      Wall Street Plaza
      88 Pine Street, Seventh Floor
      New York, New York 10005

      Attn:  James F. Sweeny, Esq.
             Michael J. Carcich, Esq.
             Kevin J.B. O'Malley, Esq.

10