UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
AFRODITE SEA TRADE S.A.,                    07 CV 5626 (DAB)

                Plaintiff,

       - against -

                                        SUR-REPLY DECLARATION OF ROY
                                        ALBERT HEWETT PURSUANT
SHINE STAR SEA-TRANSPORT PTE. LTD.          TO 28 USC § 1746
NINGBO MINMETALS & MACHINERY
IMP. & EXP. CORP., SHENYANG SANYO
BUILDING MACHINERY CO. LTD., BENXI
NORTHERN STEEL PIPES CO. LTD., and
RILICO SINGAPORE PTE. LTD.,

                Defendants.
----------------------------------------------------------------x

I, Roy Albert Hewett of 71, Notara Street, Piraeus 185 35 Greece, pursuant to section 1748 of title 28 of the United States Code hereby declare and say the following under penalty of perjury:

1. I am the same Roy Albert Hewett who made the declaration herein dated 21st March 2008. My personal details remain the same.

2. Insofar as the contents of this declaration are within my own knowledge, they are true. Insofar as the contents of this declaration are not within my own direct knowledge, there are true to the best of my information and belief, being derived from my instructions on behalf of Afrodite.

3. I have read the reply declaration of Mr. Wang Lianxue dated March 2008 (my copy does not bear the precise date) and the Reply Memorandum of Law. I make this declaration to respond thereto insofar as the matters raised relate to the substantive issues, to which English law is applicable.

4. I note that it is suggested in the reply submissions of law that, in effect, Clause 46 of the charterparty should prevail over the terms of the Bill of Lading, itself. This is entirely incorrect as a matter of Engilsh law. Where provisions of a charterparty are expressly incorporated into bill of lading by general words of incorporation, as is the case here, each specific provision must be examined to see whether it is consistent with the express terms of the bill of lading. If it is not, "it will be rejected". I attach marked "RAH8" the relevant passage (Article 37) in Scrutton on Charterparties (20th Edition), a leading text-book on English maritime law. I repeat that the arbitrators, who include Mr. Bruce Harris, the sole arbitrator in the reference with Benxi, have determined in principle that

*RAH*

hire is payable contractually under the Owners' bill of lading as a matter of English law in the consolidated reference involving Shenyang and Ningbo. That determination is correct as a matter of English law.

5. It is suggested that the security ordered by way of attachment should be reduced, if the attachment is not released. As I understand, it is suggested that part of the outstanding hire may relate to the period before Benxi's cargo was loaded on board the Owners' ship. This is not true. I would refer the Court to the document marked "Z" attached to the Owners' claim submissions in the consolidated London arbitration reference (Exhibit "RAH7"). That document is the Owners' hire statement, showing the balance claimed of USD 585,453.31. As the Court will see this balance is struck after crediting payments of hire made by the Charterers of USD 1,664,649.50. In other words it is only the last approximately 22 days of the service, which remained unpaid, out of a total charter period of 85.5417 days. The argument advanced on behalf of Benxi is a false point. There is no basis upon which the security should be reduced.

6. I am astonished to read that, according to Mr. Wang Lianxue, it was the agents representing the Buyers of the cargo, who issued the bill of lading, which was the bill of lading negotiated through the banking chain. Needless to say that bill of lading was wholly unauthorized by the Owners and is totally irregular and fraudulent. Its production can have no bearing on the terms upon which the Owners received the cargo as bailee to carry it to Jeddah, the terms whereof are contained in the Owners' authorised bill of lading, in strict conformity with the mate's receipts issued for the cargo. However I note that there is no satisfactory explanation about the dating of the bill of lading, to which I referred in paragraph 8 of my declaration dated 21st March 2008. Mr. Wang Lianxue now suggests that the bills of lading was reissued by Asia Access Express on 5th May 2007, "to be used by Ruby Star when the cargo was picked-up at its destination". How then did Benxi have possession of a copy of that reissued bill of lading, which was what was copied to my company on 17th September 2007? Why was the bill of lading allegedly reissued with a new date? The position will have to be investigated in the London arbitration, which will determine the substance of the Owners' claim.

7. As to the assertion that the receipt for the Owners' bill of lading was not signed by a representative of Benxi, that is another issue for determination in the London arbitration, being an issue going to the substance of the claim.

Executed in Piraeus, Greece.
9th April 2008

By R. A. Hewett
Roy Albert Hewett