UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
AFRODITE SEA TRADE S.A.

                      Plaintiff

  - against -

SHINE STAR SEA-TRANSPORT PTE LTD
NINGBO MINMETALS & MACHINERY
IMP. & EXP. CORP., SHENYANG SANYO
BUILDING MACHINERY CO. LTD., BENXI
NORTHERN STEEL PIPES CO. LTD. and
RILICO SINGAPORE PTE. LTD.

                      Defendants
---------------------------------------------------------

THIS IS THE EXHIBIT MARKED
"RAH 8"

in him all rights of suit "as if there had been a contract in the terms contained in the bill of lading and he had been a party to that contract".

### Article 37—Incorporation of Charter in Bill of Lading—General

It is very common practice to include in bills of lading issued in respect of goods carried on a chartered ship, a provision purporting to incorporate into the bills some or all of the terms of the charterparty. There are numerous decisions on the effect of such provisions. It appears that in order to ascertain which, if any, terms of the charter are incorporated into the bills, an enquiry in three stages[35] must be carried out:

(1) The incorporating clause must be construed in order to see whether it is wide enough to bring about a prima facie incorporation of the relevant term. General words of incorporation will be effective to incorporate only those terms of the charterparty which relate to the shipment, carriage or discharge of the cargo[36] or the payment of freight.[37] Which of those terms are incorporated into the bill depends on the width of the incorporating provision.[38] Where specific words of incorporation are used, either in the charter or in the bill,[39] they are effective to bring about a prima facie incorporation even if the term in question does not relate to shipment, carriage or discharge.[40] Where the intention is doubtful, the court will not hold that the term is incorporated.[41]

(2) If it is found that the incorporating clause is wide enough to effect a prima facie incorporation, the term which is sought to be incorporated must be examined to see whether it makes sense in the context of the bill of lading[42]; if it does not, it must be rejected. This

---

[35] It is possible that the first and second stages are alternative ways of describing the same process, but it is nevertheless convenient to keep them distinct.

[36] *The Annefield* [1971] P. 168 (C.A.), explaining and following *Thomas v. Portsea* [1912] A.C. 1 (H.L.) and *The Merak* [1965] P. 223 (C.A.).

[37] per Lord Atkinson in *Thomas v. Portsea, supra*, at p. 6, and Scarman J. in *The Merak, supra*, at p. 232.

[38] This aspect of the problem was not discussed in the more recent authorities, but there can be no doubt that the width of the incorporating clause is a very material consideration: see Art. 39.

[39] *The Annefield, supra*, per Lord Denning M.R. at p. 184, and Cairns L.J. at p. 186.

[40] *The Annefield, supra*, per Lord Denning M.R. at p. 184 and per Davis L.J. in *The Merak, supra*, at p. 254.

[41] *The Annefield, supra*, per Brandon J. at p. 178, citing Lords Gorrell and Robson in *Thomas v. Portsea, supra*, at pp. 9 and 11. These were cases on the incorporation of arbitration clauses, but it is submitted that the principle is of general application.

[42] *Hamilton v. Mackie* (1889) 5 T.L.R. 677, *Thomas v. Portsea, supra*, per Lords Gorrell and Robson at pp. 10 and 11; *The Merak, supra*, per Sellers L.J. at p. 250; *The Annefield, supra*; *Porteus v. Watney* (1878) 3 Q.B.D. 534 at p. 542; *Gullischen v. Stewart* (1884) 13 Q.B.D. 317; *Serraino v. Campbell* [1891] 1 Q.B. 283 at p. 289; *The Phonizen* [1966] 1 Lloyd's Rep. 150.

76        *Bills of Lading for Chartered Ship*        [Art. 37

process should be performed intelligently and not mechanically,[43] and must not be allowed to produce a result which flouts common sense.[44] Where the term relates to shipment, carriage or delivery, some degree of manipulation is permissible to make its words fit the bill of lading,[45] but not where the term relates to other matters.[46]

(3) Where there is an incorporation which is prima facie effective, the term in question must be examined to see whether it is consistent with the express terms of the bill. If it is not, it will be rejected.[47]

### Article 38—Identification of the Charter

Where the incorporating clause refers to, but does not identify, a charterparty, the court will assume that the reference is to any charter under which the goods are being carried.[48] Difficulties can arise where there are two charters, one between the shipowner and a charterer, and one between the charterer and a sub-charterer. It is submitted that a general reference will normally be construed as relating to the head charter,[48] since this is the contract to which the shipowner, who issues the bill of lading, is a party. But this will not invariably be so, and the court may conclude, on examining the facts, that the intention was to incorporate the sub-charter[49]; or even, in extreme cases, that the bill of lading is so ambiguous as to be void.[50]

A reference to a void charterparty is valid to incorporate the terms of the document in which the purported charter is contained.[51]

---

[43] *The Annefield, supra, per* Cairns L.J. at p. 186.
[44] *Miramar Maritime Corporation v. Holborn Oil Trading Ltd* [1984] A.C. 676.
[45] *The Annefield, supra, per* Lord Denning M.R. at p. 184; *The Merak, supra, per* Russell L.J. at p. 260. *Cf. Miramar Maritime Corporation v. Holborn Oil Trading Ltd, supra* ("charterer" not read as "receiver" so as to render receiver liable for demurrage).
[46] For this distinction, see *The Merak* [1965] P. 223, 260 (*per* Russell L.J.); *The Annefield* [1971] P. 168, 134 (*per* Lord Denning M.R.). *Contra* is *The Rena K* [1978] 1 Lloyd's Rep. 545, where Brandon J. was prepared to manipulate so as to give effect to the arbitration clause in a charterparty expressly mentioned by the incorporation clause in the bill of lading.
[47] *Gardner v. Trechmann* (1884) 15 Q.B.D. 154, *per* Brett M.R. at p. 157; *Akt. Ocean v. Harding* [1928] 2 K.B. 371, *per* Scrutton L.J. at p. 384; *Serraino v. Campbell, supra, per* Kay L.J. at p. 301; *Vergottis v. Robinson* (1928) 31 Ll.L.R. 23, *per* Roche J. at p. 28; *Hogarth v. Blyth* [1917] 2 K.B. 534 *per* Swinfen-Eady L.J. at p. 549. See also *Red "R" SS. Co. v. Allatini* (1909) 15 Com.Cas. 290.
[48] At any rate if it is a voyage charter: approved in *K/S A/S Seateam v. Iraq National Oil Co. (The Sevonia Team)* [1983] 2 Lloyd's Rep. 640 at p. 644. The position is less clear where it is a time charter, the terms of which are in many respects inapposite to the carriage of goods on a voyage. The court might well hesitate to hold the consignee liable for, say, unpaid time charter hire: approved in *The Nanfri* [1978] 1 Lloyd's Rep. at p. 591, *per* Kerr J.
[49] For example, where the charterer issues the bill. See *Lignell v. Samuelson* (1921) 9 Lloyd's Rep. 361, where the charterer signed the bill on behalf of the master.
[50] *Smidt v. Tiden* (1874) L.R. 9 Q.B. 446. We believe that the court would nowadays hesitate long before arriving at this conclusion.
[51] *per* Russell J. in *Akt. Ocean v. Harding* [1928] 2 Q.B. 371 (C.A.).